James **THEODORO**, d/b/a **One Stop Boat & Motor**, Appellant,

v.

**CITY OF HERCULANEUM**, Respondent.

No. 63854.

Missouri Court of Appeals, Eastern District, Division Three.

July 12, 1994.

John J. Donnelly, St. Louis, for appellant.

Ronald C. Willenbrock, Amelung, Wulff and Willenbrock, St. Louis, for respondent.

SIMON, Presiding Judge.

Appellant, James Theodoro, doing business as One Stop Boat and Motor Shop, appeals from the granting of respondent's, City of Herculaneum, motion to dismiss his petition for negligence.

On appeal, appellant claims the trial court erred in granting respondent's motion to dismiss because: (1) appellant stated a cause of action in his pleadings in that he sufficiently alleged in his second count each of the elements required to establish the "dangerous condition" waiver of sovereign immunity found in § 537.600.1(2) R.S.Mo.1986 (all statutory references hereafter shall be to R.S.Mo.1986); (2) the "public duty doctrine" is inapplicable to this case and does not prevent appellant from alleging respondent owed him a duty in that § 537.600 has abolished the doctrine's applicability in "dangerous condition" cases; and (3) appellant stated a cause of action in his pleadings in that he sufficiently pled that respondent, in constructing and maintaining its waterworks system, operated in a proprietary capacity for which the defense of sovereign immunity is not available and that respondent's negligent construction and operation of the waterworks damaged him. We affirm.

On or about December 28, 1990, appellant's premises where he conducted business as One Stop Boat and Motor Shop caught fire. When respondent's fire department personnel arrived, they found that the fire hydrant, which was approximately 300 feet from appellant's premises, did not supply enough water and water pressure to extinguish the fire. The fire hydrant was connected to a two inch water line, and the hydrant had a five inch opening for the attachment of a fire hose. The insufficient amount of water and water pressure caused a delay of over one hour before the fire department could begin fighting the fire using water obtained from another municipality. The fire destroyed appellant's premises and its contents.

On January 12, 1992, appellant filed a petition against respondent alleging that respondent had a duty to keep its water system in operating condition so that it could provide a sufficient amount of water and pressure to extinguish fires, respondent breached this duty, and as a direct and proximate result of respondent's negligence, appellant's premises were damaged and depreciated. Respondent filed a motion to dismiss appellant's petition asserting that it failed to state a cause of action upon which relief can be granted, and that respondent is entitled to sovereign immunity. On October 16, 1992, after a hearing concerning respondent's motion to dismiss, the trial court sustained respondent's motion to dismiss but granted appellant twenty days to amend his petition. On November 3, 1992, appellant filed his first amended petition, which alleged that respondent was negligent and careless because: respondent owned, operated and exercised exclusive and complete control over the operation and maintenance of its waterworks system; the occurrence was of such a nature that it ordinarily would not occur in the absence of someone's negligence; and as a direct and proximate cause of the negligence and carelessness, appellant's property was damaged and depreciated. The record indicates that on November 16, 1992, respondent filed a motion to dismiss appellant's first amended petition, however that motion to dismiss is not part of the record on appeal.

On December 21, 1992, appellant filed his second amended petition which alleged in pertinent part the following:

### Count I

\* \* \* \* \* \*

8. That on or about December 28, 1990, [appellant's] premises caught fire.

9. That the fire destroyed the premises and its contents....

10. That when the fire department arrived at the scene of the fire, there was an insufficient amount of water and pressure found in the system owned and operated by [respondent] to enable the fire department to extinguish the fire.

11. That this insufficient amount of water and pressure caused a delay of over one hour in allowing the fire department to

begin fighting said fire until after a sufficient amount of water and pressure were obtained from the water system of another municipality.

12. That had there been a sufficient amount of water and pressure in said system, [appellant's] losses would have been substantially lessened.

13. That [respondent] was negligent and careless in the following respects:

a) That the ... occurrence was of such a nature that it ordinarily would not occur in the absence of someone's negligence.

b) That [respondent] owns, operates and exercises exclusive and complete control over the operation and maintenance of its water works system.

c) That the occurrence in questions [sic] was not due to any voluntary act or contribution on the part of appellant.

d) That [respondent] possessed and possesses superior knowledge or means of information as to the reason there was an insufficient amount of water and pressure in the system to extinguish the fire on [appellant's] premises.

14) That as a direct and proximate result of negligence and carelessness of [respondent], the [appellant's] property was caused to be damaged and depreciated.

### Count II

\* \* \* \* \* \*

16) That [respondent] placed a fire hydrant approximately 300 feet from [appellant's] premises, such hydrant being a part of the water system owned and operated by [respondent].

17) That the water hydrant installed by [respondent] or its agents contained a five inch long opening for the attachment of fire hoses.

18) That [respondent] or its agents connected a two inch water line to transport water to the water hydrant.

19) That the connection of a two inch line to feed water to a fire hydrant that had a five inch opening for fire hoses caused there to be an insufficient amount of water and pressure for the fighting of fires.

20) That the connection of a two inch line to feed water to a hydrant with a five inch opening for fire hoses was a dangerous condition of [respondent's] property.

21) That this dangerous condition of [respondent's] property caused [appellant's] property to be damaged and depreciated.

22) That this dangerous condition created a reasonably foreseeable risk of harm the kind [appellant] sustained.

23) That [respondent] employees' construction of its water system in such fashions was negligent.

24) That [respondent] had knowledge of the dangerous condition in sufficient time to have taken measures to correct this dangerous condition.

25) That, pursuant to section 537.600 of RSMO, 1986, [respondent's] maintenance of its property in a dangerous condition results in [respondent's] waiver [of] whatever immunity it may have possessed by virtue of being a municipal corporation.

### Count III

24) [Appellant] realleges the averments of paragraphs ... 8–14 and incorporates them in this paragraph as if set out herein.

25) That in addition to providing water for its governmental functions, [respondent's] ownership and operation of a water system was in a proprietary capacity in that it sold water to residents for consumption.

26) That by such ownership and operation, [respondent] waived whatever immunity it may have possessed by virtue of being a municipal corporation....

On January 8, 1993, the trial court issued a memorandum stating that counsel agree that leave will be granted for appellant to file a second amended petition and further agree that respondent's motion to dismiss appellant's first amended petition shall be taken to apply to appellant's second amended petition without the necessity of respondent being required to file a new motion to dismiss. In light of this ruling by the trial court and for the sake of clarity, we will hereafter refer to respondent's motion to dismiss appellant's first amended petition as its motion to dismiss.

Appellant filed a memorandum in opposition to respondent's motion to dismiss, and respondent filed a memorandum in response, to which appellant filed a memorandum in response. On April 1, 1993, the trial court conducted a hearing on respondent's motion to dismiss, and on April 16, 1993, the trial court sustained respondent's motion to dismiss without stating the grounds for the ruling. Accordingly, we presume the court based its dismissal on the grounds stated in the motion to dismiss. *Patterson v. Meramec Valley R–III School District,* 864 S.W.2d 14, 15 (Mo.App.1993). Although the motion to dismiss is not part of the record on appeal, we may presume that the motion to dismiss asserts the same grounds as respondent's motion to dismiss appellant's original petition, which is part of the record on appeal, because the parties in their memoranda and briefs treat the motion to dismiss as asserting the same grounds for dismissal as the motion to dismiss appellant's original petition.

In reviewing a dismissal on the pleadings, we treat all facts stated in appellant's petition as true, and construe all allegations in his favor. *Id.* In so doing, our duty is to decide whether plaintiff is entitled to relief according to dictates of the substantive law. *Id.*

In his first point, appellant asserts that the trial court erred in granting respondent's motion to dismiss because appellant sufficiently alleged in his second count each of the elements required to establish the "dangerous condition" waiver of sovereign immunity found § 537.600.1(2).

Under § 537.600.1, a public entity is afforded sovereign immunity from tort actions. *Kanagawa v. State By and Through Freeman,* 685 S.W.2d 831, 834[1] (Mo. banc 1985). However, under § 537.600.1(2), sovereign immunity is waived for injuries caused by the dangerous condition of a public entity's property. Section 536.600.1(2) requires a plaintiff to allege facts that demonstrate: (1) a dangerous condition of the property; (2) that the plaintiff's injuries directly resulted from the dangerous condition; (3) that the dangerous condition created a reasonably foreseeable risk of harm of the kind plaintiff incurred; and (4) that a public employee negligently created the condition or that the public entity had actual or constructive notice of the dangerous condition. *Id.* at 834–35[2]. The provision waiving sovereign immunity must be strictly construed. See *id.* at 835[3]. Additionally, we note that the term "direct result" is synonymous with "proximate cause," or a "cause which directly, or with no mediate agency, produces an effect." *Dale v. Edmonds,* 819 S.W.2d 388, 390[5] (Mo.App. 1991).

Appellant argues that his second count of his second amended petition pleads facts establishing a dangerous condition, namely, that the hydrant had an intake line that was only two inches wide whereas the hose opening was five inches wide. Appellant also points out that his second count pleads that: the dangerous condition caused damage to his property; the condition created a reasonably foreseeable risk of harm that appellant experienced; respondent's employees negligently created the condition; and respondent had notice of the condition. Appellant contends that he pled each and every one of the required elements of § 537.600.1(2), and cites *Chase v. City of St. Louis,* 781 S.W.2d 571 (Mo.App.1989) in support.

The record indicates that count two of appellant's second amended petition states in paragraphs 8 and 9 that his premises caught fire and the fire destroyed his premises. Appellant also alleged in paragraph 20 that the connection of a two inch line to feed water to a hydrant with a five inch opening for fire hoses was a dangerous condition of respondent's property, and states in paragraph 21 that this dangerous condition of respondent's property caused appellant's property to be damaged and depreciated. Section 537.600.-1(2) requires that the plaintiff's injuries *directly resulted* from the dangerous condition of public property. *Kanagawa,* 685 S.W.2d at 834–35[2]. In strictly construing this requirement, *id.* at 835[3], we find that appellant's second amended petition fails to allege facts showing that the fire which destroyed his premises and the contents therein *directly resulted* from the condition of respondent's fire hydrant. He has failed to allege that the

fire hydrant was a cause which directly, or with no mediate agency, produced the fire destroying appellant's premises. See *Dale,* 819 S.W.2d at 390[5].

Our finding is consistent with *Patterson, supra.* In *Patterson,* minor plaintiff's classmate threw a piece of asphalt at plaintiff striking him on the head. *Patterson,* 864 S.W.2d at 15. Minor plaintiff's classmate took the asphalt from an area of the school property on which pavement had deteriorated and broken pieces of asphalt could be found. *Id.* Minor plaintiff and his parents sued the school district alleging that it was negligent because it knew or should have known of the deteriorated pavement and broken pieces of asphalt, the asphalt pieces created a dangerous condition on the property, it should have known the likelihood that students would throw broken pieces of asphalt, it should have better supervised the students, and it should have denied access to the area in question. *Id.* The school district filed a motion to dismiss, or in the alternative, for summary judgment, and the trial court granted the motion to dismiss. *Id.* In affirming, we found that plaintiff's petition was insufficient for failing to allege direct causation pursuant to § 537.600.1(2). *Id.* at 16[3]. We stated that the allegation that the injury was sustained after a classmate threw the broken piece of asphalt forecloses an allegation of direct causation, and that assuming the condition of the asphalt street was dangerous, minor plaintiff did not allege he was injured by the defect as a pedestrian or equivalent. *Id.* Here, appellant's allegation that the fire destroyed his premises also forecloses an allegation that the fire hydrant directly caused his injuries.

Our finding also comports with *Chase, supra.* In *Chase,* plaintiff's daughter lived in a house in the City of St. Louis which caught fire. *Chase,* 781 S.W.2d at 571. The City of St. Louis fire department was summoned to fight it, and upon arriving, they discovered that the fire hydrants in the area were inoperable and they were unable to fight the fire. *Id.* Plaintiff's daughter was unable to escape from the burning house and died. *Id.* Plaintiff sued the City of St. Louis (as well as the owner of the house). *Id.* Plaintiff al-

leged that as proximate result of the negligence of the City of St. Louis, plaintiff's daughter died in the fire. *Id.* at 572. The trial court granted the City of St. Louis' motion to dismiss, and plaintiff appealed. *Id.* at 571. In affirming, we held that plaintiff's petition failed to allege any facts showing that the hydrants were physically defective and that this defect was created by the acts or omissions of the fire department or a city employee, pursuant to § 537.600.1(2) and *Kanagawa, supra. Id.* Here, plaintiff's petition also fails to comply with the requirements of § 537.600.1(2) as articulated in *Kanagawa* by failing to allege facts indicating that his injuries directly resulted from the fire hydrant or any facts alleging that the city had actual or constructive notice of a defect in time to take action to remedy it. Point denied.

In his second point, appellant asserts that the trial court erred in granting respondent's motion to dismiss because the "public duty doctrine" is inapplicable to this case and does not prevent appellant from alleging respondent owed him a duty in that § 537.600 has abolished the doctrine's applicability in "dangerous condition" cases. Appellant asserts that if a plaintiff such as appellant alleges he has been injured by the dangerous condition of an entity's property and he can sufficiently plead the other elements of § 537.600.1(2), he should be allowed to proceed on the merits of the case.

Because we have already found that appellant has failed to sufficiently plead the direct causation element of § 537.600.1(2), appellant's second point is without merit. Point denied.

■ In his third point, appellant asserts that the trial court erred in granting respondent's motion to dismiss because appellant stated a cause of action in his pleadings in that he sufficiently pled that respondent, in constructing and maintaining its waterworks system, operated in a proprietary capacity for which the defense of sovereign immunity is not available and that respondent's negligent construction and operation of the waterworks damaged him.

Municipalities are, in general, not liable for torts arising out of the performance of governmental functions, which are those which involve the exercise of governmental power, assumed for the exclusive benefit of all the people in the community. *Harris v. City of Kansas City*, 759 S.W.2d 236, 238[3] (Mo.App.1988). The creation of a municipal fire department is for the benefit of the general public, and therefore, any act or omission of the municipality associated with the performance of this service is a governmental function for which the municipality ordinarily may not be held liable. *Id.* Our Supreme Court stated in *Lober v. Kansas City*, 74 S.W.2d 815 (Mo.1934):

It may be conceded that, where a city owns and operates a water system for the dual purpose of supplying its inhabitants with water for revenue, a proprietary purpose, and also for the prevention of fires and for keeping the city sanitary and healthful, a governmental purpose, then it is the duty of the city to keep the same as a whole in repair free from danger to others, and, if damage done by defects in or lack of repair of water mains or other appliances used concurrently in both capacities, then the city is liable. [Citations omitted.] "In the extinguishment of fires and in making arrangements therefor, the municipality acts in its governmental capacity, and is not liable for damages caused by the negligence of its fire department." * * * [Citations omitted.] *Nor is it liable for the negligent construction, maintenance, or use of appliances for the extinguishment of fires.* [Citations omitted.]

\* \* \* \* \* \*

[A] well-considered case on this subject, and carefully distinguishes the use by a city of its waterworks system in its governmental functions and in its proprietary functions ... said: "It is undoubtedly true that a municipal corporation can exercise its dual functions, governmental and proprietary, through the same agents and to a certain extent by the same instrumentalities. * * * The same instrumentalities could be used, if available, for twofold purpose. The water pipes carried water throughout the city for the purpose of fire protection and also for sale to consumers. It is obvious that said water pipes were used and operated by the city in a dual capacity. .... [T]he city not only constructed and used its water pipes in a dual capacity, but it saw fit to use the hydrant for a dual purpose, conformable to the dual function exercised by the city. The hydrant as such was a part of the fire apparatus of the city and used and operated by the city in its governmental capacity for fire protection. *Had it been defective in this respect and for this purpose, and had appellee suffered fire loss as a result, no recovery on the ground of negligence could be had."*

(Emphasis supplied.) *Id.* at 822–23[11].

The record indicates that appellant states in his third count of his second amended petition that in addition to providing water for its governmental functions, respondent's ownership and operation of a water system was in a proprietary capacity in that it sold water to residents for consumption, and that such ownership and operation waived whatever immunity it may have possessed by virtue of being a municipal corporation. In his brief, appellant argues that respondent was acting in a proprietary capacity when it constructed its waterworks, and that its negligence in putting together pipes so that they cannot deliver water is no different from constructing a sewer system that causes buildings to buckle. Appellant cites *St. Joseph Light and Power Co. v. Kaw Valley Tunneling, Inc.*, 589 S.W.2d 260 (Mo. banc 1979) in support.

Even if respondent's waterworks system attached to the hydrant and the hydrant itself operated in dual capacity, the parties do not dispute that the fire department attempted to employ these apparatuses to extinguish the fire, thus, at that time, they were being used in their governmental capacity for fire protection. *See Lober, supra.* Because they were being used for this governmental capacity, respondent is not liable for appellant's injuries. *See Harris, supra.*

We find *St. Joseph Light, supra,* distinguishable. In *St. Joseph Light,* plaintiff power company brought suit against a municipal-

ity for damages to its buildings and facilities resulting from the city's negligence in failing to exercise proper control over the sewer construction company and in failing to take proper steps to avoid damage to the property of others. *St. Joseph Light,* 589 S.W.2d at 263. Here, appellant alleged in count three of his second amended petition that respondent's "ownership and operation of a water system was in a proprietary capacity in that it sold water to residents for consumption." Appellant has failed to allege in his third count of his second amended petition that respondent's negligence in the construction of the water system leading to the fire hydrant directly caused his injuries. We note that in paragraph 23 of his second count appellant alleges that respondent's "employees' construction of its water system ... was negligent," but he does not incorporate this paragraph into his third count.

Further, we find guidance in *Lober, supra,* where our Supreme Court stated:

.... Where the city owns and operates the waterworks system and uses the same indiscriminately in the performance of both its governmental functions and its proprietary or private functions, it is necessary in a particular case to distinguish as to which is the primary use and which [is] the incidental use; and it may be necessary and proper to inquire, in reference to the particular negligent injury, as to whether the particular part or appliance of a waterworks system was devoted solely at the time or generally to a governmental function or to a corporate function, or whether the particular act in question was called for or caused by a governmental or a proprietary duty. [Citation omitted] ... "Hydrants are principally for fire protection. At the same time they are used, to some extent, to clean streets and to furnish water to sprinkle streets. In so far as injury results from their use in connection with the fire department there is no question but that the municipality is not liable [citation omitted], and this is so although the hydrants are the property of and belong to the municipal water plant; but municipalities have been held liable where the defect was in the hydrant or pipes connecting it with the main, although the hydrant was used purely for fire purposes. In so far as the injury results from defects in, or the use of, hydrants, *wholly disconnected from any use by the fire department,* municipalities are generally held liable. * * * The true rule would seem to be that municipalities are liable for injury caused by the negligence of an employee in flushing hydrants, if the flushing is an incident of its regular water service, *but not if incident to its fire department service.* [Citation omitted.]"

(Emphasis supplied.) *Lober,* 74 S.W.2d at 821–22[10]. Here, respondent was using the hydrant to provide fire protection, a governmental function. Point denied.

Judgment affirmed.

PUDLOWSKI and KAROHL, JJ., concur.