**Walter WARREN, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 52620.**

Missouri Court of Appeals, Western District.

Feb. 25, 1997.

Thomas M. Schneider, Jones, Schneider and Bartlett, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, John R. Munich, Gregory L. Barnes, Assistant Attorneys General, Jefferson City, for respondent.

Before BRECKENRIDGE, P.J., and HANNA and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Walter Warren brought suit against the State of Missouri and various prison officials for injuries he alleges he sustained when a table saw he was using in the prison furniture factory kicked back and struck him because it lacked a safety guard. We affirm the trial court's grant of the individual prison officials' motions to dismiss based on the official immunity doctrine. We reverse the trial court's grant of the State of Missouri's motion to dismiss, however. Mr. Warren's claim falls directly within the State's waiver of immunity for injuries caused by a dangerous condition of the public entity's property. We remand for further proceedings in accordance with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Walter Warren, Plaintiff–Appellant, was an inmate at the Missouri State Penitentiary on September 26, 1986, when he was injured by a piece of lumber which was thrown back at him, striking his right wrist, as he was using a table saw in the prison furniture factory. Mr. Warren brought suit against the State of Missouri, the Missouri Department of Corrections, and various individual prison officials.[1] His Petition claimed that his injury was caused by a dangerous condition of the table saw, in that the saw did not have a safety guard to prevent it from kicking back and allowing the lumber to strike him. Mr. Warren's Petition also alleged that Defendants had reason to know of the dangerous condition, and in fact had removed the guard that came with the table saw.

Mr. Warren eventually dismissed the Missouri Department of Corrections as a defendant. The remaining defendants filed a joint Motion to Dismiss. Their motion asserted

---

1. The latter included Dick Moore, Director of the Missouri Department of Corrections, Bill Armontrout, Warden of the Missouri State Penitentiary, Leonard Rutledge, Director of Missouri State Penitentiary industries, and Richard Anderson, manager of the prison furniture factory where Mr. Warren was injured.

that the individual defendants were protected from suit by official immunity and the public duty doctrine and that the State of Missouri was immune from suit under the sovereign immunity and public duty doctrines. The trial court granted all Defendants' motions to dismiss without opinion. This appeal followed.

## II. STANDARD OF REVIEW

When reviewing the trial court's grant of a motion to dismiss, we treat all facts pleaded in the Petition as true and give the nonmoving party the benefit of all reasonable inferences. *Leeser Trucking, Inc. v. Pac–A–Way, Inc.*, 914 S.W.2d 40, 42 (Mo. App.1996); *Evergreen Nat'l Corp. v. Killian Constr. Co.*, 876 S.W.2d 633, 635 (Mo.App. 1994). Where, as here, the trial court does not state a basis for its dismissal, we presume that dismissal was based on the grounds stated in the motion to dismiss, that is, official immunity, the public duty doctrine, and sovereign immunity. We will affirm if dismissal was appropriate on any ground supported by the motion to dismiss. *Shaver v. Shaver*, 913 S.W.2d 443, 444 (Mo.App. 1996).

## III. THE INDIVIDUAL DEFENDANTS WERE PROPERLY DISMISSED UNDER THE DOCTRINE OF OFFICIAL IMMUNITY

Under the doctrine of official immunity, public officers are not liable for injuries caused by their discretionary acts, but may be liable for injuries caused by their ministerial acts. *Charron v. Thompson*, No. 78783 slip op. at 3, 1997 WL 78517 at * 1 (Mo. banc Dec. 17, 1996); *Kanagawa v. State By and Through Freeman*, 685 S.W.2d 831, 835 (Mo. banc 1985); *Rustici v. Weidemeyer*, 673 S.W.2d 762, 768–69 (Mo. banc 1984). Therefore, in order to determine whether the official immunity doctrine applies, we must determine whether the individual defendants' alleged negligent act of failing to provide or removing a safety guard from the saw, thereby allowing the table saw to kick back and injure Mr. Warren, should be considered a ministerial or discretionary act.

*Discretionary acts* require "the exercise of reason in the adaption of means to an end, and discretion in determining how or whether an act should be done or a course pursued." *Rustici*, 673 S.W.2d at 769 (quoting *Jackson v. Wilson*, 581 S.W.2d 39, 43 (Mo.App.1979)). In contrast, *ministerial acts* are "of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, *without regard to his own judgment or opinion concerning the propriety of the act to be performed.*" *Id.* (emphasis added).

Whether an act is discretionary or ministerial is determined on a case-by-case basis. Relevant factors include "the nature of the official's duties, the extent to which the acts involve policymaking or the exercise of professional expertise and judgment, and the likely consequences of withholding immunity." *Kanagawa*, 685 S.W.2d at 836. The definition of discretionary acts should not be so narrowly construed as to frustrate the purpose of official immunity, which is to relieve public servants from the fear of burdensome litigation. *Charron*, slip op. at 3–4; *Bachmann v. Welby*, 860 S.W.2d 31, 33 (Mo. App.1993); *Kanagawa*, 685 S.W.2d at 836.

In support of his claim that the negligence of the individual defendants resulted from a ministerial rather than a discretionary act, Mr. Warren notes that at the time of his injury, a statute provided that the division director of the prison industry and services program *"shall purchase, lease, or otherwise provide suitable plants, machinery, and equipment"* for the correctional industry and services program. § 217.560.2, RSMo 1986 (repealed) (emphasis added). A Department of Corrections regulation in effect at the time of Mr. Warren's injury similarly provided, *"All work areas containing moving machinery will have appropriate safety guards in place."* Regulation 216.020(3)(A) (emphasis added).

Mr. Warren claims that this statute and regulation made placement of safety guards on the saw a mandatory and therefore ministerial duty, not a duty left to the discretion of prison officials. Therefore, he argues, failure to place the guard on the saw constituted breach of a ministerial duty and thus is not protected by the official immunity doctrine.

In support, he cites to cases finding public officials conduct to be ministerial in the case before them. See, for example, *Jungerman v. City of Raytown*, 925 S.W.2d 202, 206 (Mo. banc 1996), which held that where the police department's regulations set out detailed procedures for inventorying, recording, and storing an arrestee's property, such activities constituted ministerial functions.

We do not agree that the rationale of these cases applies here. The statute cited by Mr. Warren requires use of "suitable" equipment. Similarly, the regulation in question requires use of "appropriate" safety guards. Unlike the situation in *Jungerman*, neither the statute nor the regulation further describe what constitutes "suitable" or "appropriate" safety equipment, thus leaving that determination to the officials charged with carrying out the duties involved.

Prior Missouri cases have held that a ministerial function is the antithesis of a function that is left to be performed in a manner the acting official believes to be "appropriate" or "suitable." Thus, as stated in *Clay v. Scott*, 883 S.W.2d 573 (Mo.App.1994):

a ministerial function involves clerical duties which a public officer is required to perform upon a given state of facts, in a prescribed manner, in compliance of legal authority, *without regard to the public officer's own judgment or opinion on the appropriateness of the act.*

*Id.* at 576 (emphasis added).

We applied this reasoning recently in *Miller v. Smith*, 921 S.W.2d 39 (Mo.App.1996). The Millers' son committed suicide while he was in police custody and being transported to the police station. They alleged that the suicide was the result of negligence on the part of the police in safeguarding their son during transport. Relevant regulations stated that the police officers having custody of an arrestee "shall be responsible for the proper safeguard of such person." *Id.* at 46. The regulations did not further set out what type of safeguard was "proper" while an arrestee is being transported. We held that the regulation thus left "the decision on how to safely transport an arrestee to the police station ... to the professional judgment of the police officer." *Id.* We therefore held that official immunity protected the individual officers from suit. *Id.*

In reliance on *Clay, supra*, we similarly held in *Barry Serv. Agency Co. v. Manning*, 891 S.W.2d 882, 888 (Mo.App.1995), that a requirement that the Director of a particular Missouri department of government consider the "appropriateness" of rate requests by lenders left it to the discretion of the Director whether to approve the rate requests, stating:

The word "appropriateness" is a noun meaning the quality or state of being appropriate. *Webster's New Twentieth Century Dictionary* 91 (2d ed. 1983). As observed by the trial court, the plain meaning of the word "appropriate" when used as an adjective is "suitable," "proper," "fitting," or "necessary." All these terms comprehend the exercise of some measure of judgment or discretion.... Thus, the Director's task in approving rate requests under § 408.500.1 is not purely ministerial in nature.

*Id.* at 888 (citation omitted).

The rationale of these cases governs here. While Mr. Warren believes that the only "suitable" or "appropriate" safety decision was to put on the safety mechanism provided by the manufacturer, it was up to the prison officials to determine what safety equipment was necessary or adequate in regard to the particular use of the saw being made by the prison machine shop. It may be that the provided safety guard was the best choice, but that would not always be the case and it is not up to us to determine whether it was the appropriate choice here. The regulations did not require use of supplied safety equipment, but of suitable or appropriate safety equipment. What was suitable and appropriate was a matter left up to the judgment and discretion of the officials involved. Because a discretionary duty was involved, the officials' exercise of that discretion is protected by the official immunity doctrine.

## IV. SOVEREIGN IMMUNITY DOES NOT PROTECT THE STATE FROM SUIT

### A. The State of Missouri Has Waived Sovereign Immunity in Regard to Defective Conditions of Public Property

Prior to 1977, the State of Missouri was immune from all tort liability except insofar

as it chose to waive that immunity. *Jungerman,* 925 S.W.2d at 204; *Wollard v. City of Kansas City,* 831 S.W.2d 200, 202 (Mo. banc 1992). In contrast, municipalities were permitted a more limited immunity. They were immune from suit only when exercising certain governmental, as opposed to proprietary, functions. *Jungerman,* 925 S.W.2d at 204; *State ex rel. Trimble v. Ryan,* 745 S.W.2d 672, 674 (Mo. banc 1988).

In 1977, the Missouri Supreme Court eliminated the common law doctrine of sovereign immunity in Missouri in *Jones v. State Highway Commission,* 557 S.W.2d 225 (Mo. banc 1977). In response to that decision, the legislature enacted Section 537.600. That statute explicitly reinstated the doctrine of sovereign immunity as it existed at common law in Missouri prior to *Jones.* The legislature also provided that sovereign immunity would be waived, however, in situations involving injuries caused by negligent operation of a motor vehicle or a dangerous condition of the public entity's property. More specifically, the statute waives immunity for:

> (1) Injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles or motorized vehicles within the course of their employment;

> (2) Injuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury directly resulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

§ 537.600.1, RSMo 1994. The parties disagree as to whether the latter exception applies here.

**B. Plaintiff Has Adequately Alleged Injury Due to a Dangerous Condition of Public Property**

Mr. Warren argues that his claim of injury due to the kickback of the saw because of the State's failure to provide an adequate safety guard comes directly within the "dangerous condition" exception to sovereign immunity. By contrast, the State argues that Mr. Warren has failed to allege all of the factors necessary to state a claim of injury due to a dangerous condition of the public entity.

▮▮▮ Statutory provisions that waive sovereign immunity are strictly construed. *Bartley v. Special Sch. Dist. of St. Louis County,* 649 S.W.2d 864, 868 (Mo. banc 1983); *State v. Godfrey,* 883 S.W.2d 550, 552 (Mo. App.1994). To state a claim under the dangerous condition exception to sovereign immunity, a plaintiff must allege: (1) a dangerous condition of a public entity's property at the time of the injury; (2) that the injury directly resulted from the dangerous condition; (3) that the dangerous condition created a reasonably foreseeable risk of harm of the kind that the plaintiff incurred; and (4) either that a public employee's negligence or wrongful act or omission within the course of his employment created the dangerous condition or that the public entity had actual or constructive notice of the dangerous condition. § 537.600.1(2); *Godfrey,* 883 S.W.2d at 552; *Kanagawa,* 685 S.W.2d at 834–35.

▮▮▮ The State concedes that Mr. Warren has adequately alleged a dangerous condition of public property by alleging in Count I that the table saw, owned by the State of Missouri, was in a dangerous condition because it was missing a safety guard. A dangerous condition of property includes both real and personal property. *Delmain v. Meramec Valley R–III School District,* 671 S.W.2d 415, 417 (Mo.App.1984). "A dangerous condition may be created by an intrinsic defect on the property or 'by the positioning of various items of property.'" *Godfrey,* 883 S.W.2d at 552 (quoting *Kilventon v. United Missouri Bank,* 865 S.W.2d 741, 745–46 (Mo. App.1993). The alleged defect in the table saw would constitute a dangerous condition of public property.

The State does argue, however, that Mr. Warren failed to adequately allege the second element of a claim under the dangerous condition exception because he does not allege that his injury directly resulted from the saw's dangerous condition. Rather, the State claims, he alleges that his injury was caused by a piece of lumber, not the saw; the lack of a safety guard thus was only an indirect cause of the injury, as it simply failed to prevent the lumber from kicking back at him.

In support of its position, the State relies on cases in which the evidence showed that the injury was caused by intervening affirmative misconduct by a third party rather than by the State's alleged negligence. For instance, in *Theodoro v. City of Herculaneum*, 879 S.W.2d 755 (Mo.App.1994), a building was destroyed by fire. The owner alleged that a fire hydrant constituted a dangerous condition because it did not provide sufficient water or water pressure. The court held that the condition of the fire hydrant did not directly cause the damage, for the plaintiff's injury was not caused by the fire hydrant's condition, but by the fire that destroyed the building. Even if the fire hydrant was not working properly, that inadequacy thus did not cause the fire which destroyed the building. *Id.* at 760. By contrast, here Mr. Warren alleges that it was the lack of a safety guard which allowed the lumber to kick back at him in the first instance. *Theodoro* is thus not on point.[2]

We find more guidance in *Dorlon v. City of Springfield*, 843 S.W.2d 934 (Mo.App.1992). In *Dorlon*, the plaintiff tripped on a hole in the sidewalk. The defendants claimed that the evidence was consistent with the plaintiff fainting, tripping on her own shoes, or tripping on someone else. The court held that the plaintiff's testimony that she tripped on a hole was evidence that the injury was directly caused by the dangerous condition of the property, and that plaintiff had thus made a submissible case that the dangerous condition of State property directly caused her injury.

Here, as in *Dorlon*, Mr. Warren alleges that he was injured by the State's conduct in not providing an adequate safety guard. Absent this negligence, the injury would not have occurred. It is thus alleged that it was the saw's dangerous condition that was the direct cause of Mr. Warren's injury. While the State speculates that the injury could have been caused by some force not within its control, such as removal of the safety guard by Mr. Warren or another inmate, such speculation is just that, speculation. If proved at trial, these claims could provide the State with a defense. Mr. Warren is not required to negate every theoretical alternative cause of the condition that led to his injuries just to state a claim against the State, however.

Indeed, as Mr. Warren notes, the drafters of Missouri Approved Instructions used the very fact situation before this Court as an example of the type of dangerous condition that is submissible under the State's waiver of sovereign immunity. Thus, MAI 31.16 states:

31.16 [1995 Revision] Verdict Directing— Waiver of Sovereign Immunity—Dangerous Condition of Public Entity's Property—Actual or Constructive Notice

> Your verdict must be for plaintiff if you believe:
>
> First, (*here describe condition that made the public entity's property dangerous, such as "there was oil on the gymnasium floor" or "the table saw was unguarded"*), and as a result the defendant's (*describe property, such as "gymnasium floor" or "table saw"*) was not reasonably safe, and
>
> Second, defendant knew or by using ordinary care could have known of this condition in time to [remedy] [warn of] such condition, and

---

2. *Patterson v. Meramec Valley R–III School District*, 864 S.W.2d 14 (Mo.App.1993), and *Dale v. Edmonds*, 819 S.W.2d 388 (Mo.App.1991), also cited by the State, are similarly distinguishable. In those cases plaintiffs were injured when they tripped over asphalt or debris thrown on school property by third parties. The courts in those cases properly held that the injuries were caused by the acts of the third parties, and not by the dangerous condition of the school property in having asphalt or debris on it.

Third, defendant failed to use ordinary care to [remedy] [warn of] such condition, and

Fourth, as a direct result of such failure, plaintiff sustained damage.

\* [unless you believe plaintiff is not entitled to recover by reason of Instruction Number _____ (*here insert number of affirmative defense instruction*) ].

MAI 31.16 [Supp.1996]. Paragraph First uses the very situation asserted in Mr. Warren's Petition as an example of a dangerous condition. He has adequately alleged a direct injury resulting from that condition.

Mr. Warren also met the remaining requirements for the dangerous condition exception by alleging that Defendants knew or had reason to know of the dangerous condition in sufficient time to have avoided the injury. Furthermore, Mr. Warren claimed that the presence of a guard would have prevented the saw from kicking back and that accidents similar to his own had occurred previously. Therefore, giving Mr. Warren the benefit of all reasonable inferences, we hold that Mr. Warren stated a claim against the State of Missouri under the dangerous condition exception to the sovereign immunity doctrine.

### C. The Public Duty Doctrine Does Not Protect The State From Suit Here

Finally, the State argues that it is immune from suit under the "public duty doctrine" even though Mr. Warren alleges an injury resulting from a dangerous condition of public property and even though Section 537.600 expressly waives the State's sovereign immunity where injuries result from a dangerous condition of public property. We disagree.

Several cases have held that the public duty doctrine applies not only to individual public officers, but to the governmental entities that employ them, as well. *See, e.g., Heins Implement Co. v. Missouri Highway & Transp. Comm'n,* 859 S.W.2d 681, 694 (Mo. banc 1993); *Stacy v. Truman Medical Center,* 836 S.W.2d 911, 921 (Mo. banc 1992). None of these cases has held that the doctrine would protect the State from suit for a tort where Section 537.600 states that sover-

eign immunity for that tort has been completely waived by the State, however, and we find that to apply the doctrine in that circumstance would be contrary to the express wording and intent of the statute.

As noted earlier, Section 537.600.1 states in relevant part that sovereign immunity as it existed at common law is reinstated "except that, the immunity of the public entity from liability and suit for compensatory damages for negligent acts or omissions is hereby expressly waived in the following circumstances. . . ."

Section 537.600.1(2) then specifically states that this waiver applies to "[i]njuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury" and so forth.

The complete nature of this waiver of sovereign immunity is apparent upon analysis of the history of our courts' interpretation of Section 537.600's waiver of sovereign immunity. In *Bartley v. Special School Dist. of St. Louis County,* 649 S.W.2d 864 (Mo. banc 1983), the Supreme Court held that this waiver was limited by the common law distinction between proprietary and governmental functions and that recovery under that exception also depended on the acquisition of insurance by the governmental entity.

The legislature immediately made clear that *Bartley* had misinterpreted the extent of the waiver the legislature intended in Section 537.600, for in response to *Bartley* the legislature enacted Section 537.600.2. That section provides:

2. The express waiver of sovereign immunity in the instances specified in subdivisions (1) and (2) of subsection 1 of this section *are absolute waivers of sovereign immunity in all cases within such situations whether or not the public entity was functioning in a governmental or proprietary capacity.*

§ 537.600.2 (emphasis added).

In *Wollard v. City of Kansas City,* 831 S.W.2d 200 (Mo. banc 1992), our Supreme Court held that by adopting Section 537.600.2, the legislature intended to broaden the waiver of sovereign immunity in Section

537.600.1 beyond that permitted under the common law. In so holding, the Court rejected the contention that Section 537.600 simply reestablished sovereign immunity exactly as it existed prior to its abrogation in *Jones*, but then created two specific limited exceptions for cases in which the injury is caused by a dangerous condition or negligent operation of a motor vehicle. To the contrary, *Wollard* held that by enactment of Section 537.600 it was "[t]he intention of the legislature to remove these two categories of torts from common law immunity and to provide a uniform statutory cause of action." *Id.* at 203. The Court held that this was clear from the fact that subsection 537.600.2 provides an absolute waiver "in *all* cases" involving dangerous conditions of public property. *Id.* (emphasis in original). The Court further noted that given these facts:

the plain meaning of the statutory language manifests the legislative intent to bring all suits against public entities for the negligent operation of a motor vehicle or for the dangerous condition of the entity's property within the scope of § 537.600.

*Id.*

*Wollard* thus said that the waiver of sovereign immunity was complete in regard to *all* suits against public entities for the dangerous condition of the public entity's property. Mr. Warren's Petition against the State falls squarely within this category. Were we to engraft a public duty exception to the otherwise absolute waiver contained in Section 537.600, as argued by the State, it would make the waiver largely meaningless, for the public duty doctrine is very broadly defined in Missouri. Indeed, such a reading of the statute would preclude liability in one of the very situations which MAI 31.16 itself lists as an example of a dangerous condition for which suit can be given against the State—

i.e., where a prisoner is injured by failure to use a safety device on government property. Such a reading of the statute would not only defeat its purpose, it would be contrary to common sense, for there would be very few dangerous conditions of public property which did not involve either a discretionary duty or a duty owed to the public rather than to an individual.[3]

For these reasons, we believe that if the legislature had intended to limit the waiver of sovereign immunity in cases involving dangerous conditions of public property to situations in which the tort involved breach of a ministerial duty to an individual, it would have put such limitations in the statute. Instead, Section 537.600 provides for a waiver in *all* cases in which the plaintiff proves that the defective condition exists, that it directly caused the injury, that it created a reasonably foreseeable kind of harm, and that a public employee created the condition within the course of his or her employment, or had actual or constructive notice of it. Because Mr. Warren pleaded all of these requirements for suit under Section 537.600, he has stated a cause of action against the State. The court below thus erred in granting the State's motion to dismiss.

Affirmed as to dismissal of individual defendants; reversed and remanded for further proceedings in regard to claims against the State.

All concur.

---

3. *Compare Beaver v. Gosney*, 825 S.W.2d 870, 873 (Mo.App.1992) (public duty doctrine does protect public officers and employees who are acting within the scope of their duties and are performing a duty owed to the public, even after adoption of sovereign immunity and its exceptions set out in Section 537.600).