Melissa GREEN, Appellant,

v.

MISSOURI DEPARTMENT OF TRANSPORTATION, a/k/a Missouri Highway and Transportation Commission, Donald Weaver and Mark Simpson, Respondent.

No. 25970.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 12, 2004.

Motion for Rehearing or Transfer
Denied Dec. 6, 2004.

Application for Transfer Denied
Jan. 25, 2005.

J. Michael Ponder, Kathleen A. Wolz, John M. Albright, Cape Girardeau, for appellant.

Brill, Moore & Wagoner, P.C., West Plains, for respondent Mark Simpson.

John L. Oliver, Jr., Cape Girardeau, for respondent Donald Weaver.

Zachary T. Cartwright, Sen. Lit. Counsel, Rich Tiemeyer, Chief Counsel, Jefferson City, for Amicus Curiae, Mo. Hwys & Transp. Comm'n.

ROBERT S. BARNEY, Judge.

Melissa Green ("Appellant") appeals from an "Order and Judgment" entered by the Circuit Court of Shannon County, Missouri, dismissing her second amended petition for damages brought against Respondent Donald Weaver ("Weaver") and Respondent Mark Simpson ("Simpson"), (collectively "Respondents"), for acts committed within the scope of their employment with the Missouri Department of Transportation ("MoDoT").[1]

Appellant's second amended petition alleged that on October 2, 1998, while driving her vehicle on Highway 19, Appellant lost control of her vehicle due to loose gravel that "created a slick, loose and moving surface" on a curve in the roadway. Appellant's vehicle left the roadway and overturned. She contended that MoDoT owned and maintained the section of the highway upon which she was injured; that the highway was in a dangerous condition at the site where she was injured; and, that she sustained injuries because of a dangerous condition at that location. In particular, she alleged that her accident was caused by a "dangerous condition" on the roadway which was the result of negligent repair to the surface of the roadway by MoDoT and two of its employees, Weaver and Simpson. Appellant alleged that as a result of her car accident, she suffered personal injuries, including permanent paralysis which has confined her to a wheelchair. She sought damages for lost wages, pain, anxiety, medical bills, and reduced earning capacity.

The record shows that at the time of Appellant's accident, a MoDoT maintenance crew, which included Weaver and Simpson, had been making a variety of repairs to Highway 19.[2] On September 29 and 30, 1998, Weaver operated a truck that had a hydraulic broom attached to it and utilized the broom to sweep away loose gravel remaining on the roadway. Weaver finished his task on September 30, 1998, and moved to another work site. According to Appellant, "through negligence and lack of due care in failing to sweep the gravel from the road, [Weaver] left the

---

1. Appellant also brought suit against MoDoT, a branch of the Missouri Highway and Transportation Commission ("MHTC"). The MHTC, is an executive department of state government and is a public entity that, with certain exceptions, is shielded from suit by sovereign immunity. *State ex rel. Missouri Highway and Transp. Comm'n v. Dierker*, 961 S.W.2d 58, 60 (Mo. banc 1998); *see also* § 537.600. MoDoT was not dismissed from this action by the Order and Judgment challenged in this appeal. While not a party to this appeal, MoDoT filed an *amicus* brief. Statutory references are to RSMo 2000, unless otherwise set out.

2. In this particular project, MoDoT was using a "chip and seal" process as a way to "maintain, restore and repair road surfaces...." In this process, hot oil is sprayed on the surface of the roadway and then chips of gravel are spread on top of the oily surface. Thereafter, a roller is used to "push" the chips into the oil. After the roadway is "cured", a process that takes between two and five hours, a hydraulic broom is used to sweep those pieces of gravel off of the roadway that did not adhere to the hot oil.

road in a condition creating a foreseeable risk of harm" that ultimately led to her injuries. Further, she asserts Weaver, while acting within the scope and course of his employment with MoDoT, "negligently or wrongfully failed to ensure all the loose gravel had been swept from Missouri Highway 19 prior to leaving the job site."

Appellant premises Simpson's liability on the fact that, as Weaver's supervisor, he "was required to check and ensure that the other employees at the scene had performed their ministerial functions" and "to make a final pass ensuring that all the loose gravel had been removed from the roadway." Appellant asserts that it was Simpson's negligence in "fail[ing] to perform this check" that "amounted to the failure to perform a ministerial act" and resulted in Appellant's being injured by loose gravel on the roadway.[3]

Respondents filed a joint motion for summary judgment in which they maintained that, as employees of MoDoT, a branch of the executive department of the State of Missouri, they were entitled to judgment as a matter of law based on either "the public duty doctrine" or "the official immunity doctrine." Respondents, likewise, filed separate motions to dismiss Appellant's second amended petition, replicating their pleadings made in their joint motion for summary judgment.

The trial court seasonably entered an "Order and Judgment" granting Respondents' joint motion for summary judgment and their separate motions to dismiss Appellant's second amended petition.[4]

With regard to the summary judgment motion, the trial court determined "that on the claim of 'official immunity' there are no genuine issues of material facts and that [Respondents] are entitled to judgment as a matter of law." Further, the trial court stated:

the acts and conduct which [Appellant] pleads against said [Respondents] and as described in the evidence are discretionary and not ministerial and that as to each [Respondent], the uncontested evidence establishes that each exercised discretion as to their conduct. There is no prescribed manner under which each should have acted, and there are neither rules, regulations, nor legal mandate which dictate or regulate their respective conduct. The [c]ourt finds that although both operated motor vehicles in the general area of the accident on the 29th or 30th of September, [Appellant's] accident which happened on October 2 did not arise out of the operation of such trucks by [Respondents] three or four days earlier.

In sustaining Respondents' motions to dismiss, the trial court found Appellant's second amended petition "[did] not plead facts which state or from which it can be reasonably inferred, that the individual [Respondents], severally, have a duty to [Appellant] which is 'separate and distinct' from the duty to the general public." The trial court found "that under the 'public duty doctrine' [Appellant] has no cause of action against [Respondents]."

On appeal, Appellant's first point of trial court error focuses on the trial court's granting of Respondents' motion for summary judgment. Appellant maintains the trial court's ruling that Respondents were entitled to assert official immunity was contrary to Missouri law. However, as the public duty doctrine operates as a complete bar to Appellant's action, it is not

---

3. Simpson argues he was only a "nominal supervisor" on that project for a period of an hour.

4. The trial court denominated the order as "final for purposes of appeal."

necessary to engage in a lengthy discussion of official immunity in this matter. *See Spotts v. City of Kansas City,* 728 S.W.2d 242, 248 (Mo.App.1987). We determine Appellant's second point on appeal is dispositive and it, alone, will be addressed.

Appellant's second point on appeal consists of four sub-points of trial court error in sustaining Respondents' motions to dismiss. As best we discern, Appellant essentially maintains the trial court erred: (a) in applying the public duty doctrine to shield Respondents from their negligent acts because the trial court's determination renders section 537.600 meaningless, in that "relieving the negligent employee of liability [thereby negates] any liability of the sovereign which, by its nature, is vicarious"; (b) in incorrectly determining that Appellant failed to state a cause of action based on the public duty doctrine, because the doctrine is an affirmative defense, and plays no role in determining whether a petition should be dismissed for failure to state a cause of action; (c) by not recognizing Appellant set out facts showing Respondents violated section 304.160, thereby violating a duty owed to a discrete class, which included Appellant, as opposed to violating a duty owed to the public at large and removing their acts from the shield of the public duty doctrine; and, (d) by incorrectly determining Respondents were shielded by the public duty doctrine, although they were acting in a ministerial capacity at the time of their negligent acts.

■ " 'A motion to dismiss is an attack on the petition and is solely a test of the adequacy of that pleading.' " *Freeman Health Sys. v. Wass,* 124 S.W.3d 504, 506 (Mo.App.2004) (quoting *Clement v. St. Charles Nissan, Inc.,* 103 S.W.3d 898, 899 (Mo.App.2003)). " 'A petition is not to be dismissed for failure to state a claim unless it appears that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Hartford Accident and Indem. Co. v. M.J. Smith Sawmill, Inc.,* 883 S.W.2d 91, 93 (Mo.App. 1994) (quoting *Euge v. Golden,* 551 S.W.2d 928, 931 (Mo.App.1977)). " 'The ruling on a motion to dismiss is ordinarily confined to the face of the petition which is construed in a light favorable to plaintiff.' " *Id.* (quoting *Am. Drilling v. City of Springfield,* 614 S.W.2d 266, 271 (Mo.App. 1981)). "A pleading which states no cause of action confers no subject matter jurisdiction on a court and is subject to dismissal." *Phillips v. Bradshaw,* 859 S.W.2d 232, 234 (Mo.App.1993).

■ In examining Appellant's first sub-point, as best we can discern, Appellant appears to assert that in shielding Respondents through the use of the public duty doctrine, the trial court has rendered section 537.600 meaningless, because any liability of the sovereign is necessarily vicarious, and the trial court's action would have the effect of shielding the sovereign from its employees' negligent actions. We disagree.

We note that "[t]he public duty doctrine along with the official immunity doctrine are two distinct yet related common law doctrines, firmly entrenched in Missouri law, which impose obstacles to civil recovery against public officials." *Cooper v. Planthold,* 857 S.W.2d 477, 479 (Mo.App. 1993).

■ The public duty doctrine shields public officers, and the governmental bodies that employ them, from liability for injuries or damages resulting from the officers' breach of a duty owed to the general public and does not shield public officials from liability resulting from the breach of a duty owed to particular individuals. *Kinder v. Missouri Dept. of Corr.,* 43 S.W.3d 369, 372 (Mo.App.2001); *see also*

*Green v. Denison,* 738 S.W.2d 861, 865 (Mo. banc 1987). "By the public duty doctrine, a public employee is not civilly liable—even for breach of a ministerial duty—if that duty is owed to the general public rather than to a particular individual." *Jungerman v. City of Raytown,* 925 S.W.2d 202, 205 (Mo. banc 1996).

■ "Official immunity, on the other hand, protects public officials acting within the scope of their authority from liability for injuries arising from their discretionary acts or omissions." *Heins Implement Co. v. Missouri Highway & Transp. Comm'n,* 859 S.W.2d 681, 694 (Mo. banc 1993).

The policy behind these doctrines is the promotion of "effective administration of public affairs by removing the threat of personal liability from those officials who must exercise their best judgment in conducting the public's business." *Id.* at 695; *see also Brown v. Tate,* 888 S.W.2d 413, 416 (Mo.App.1994).

As previously related, as a branch of an executive department of state government, MoDoT is a public entity that, except under certain circumstances, is shielded from suit by sovereign immunity. *Dierker,* 961 S.W.2d at 59.

As explained in *Beaver v. Gosney,* 825 S.W.2d 870 (Mo.App.1992),

In 1978, the legislature re-established sovereign immunity in response to the Supreme Court's abrogation of the common law doctrine ... Section 537.600 expressly waives immunity only in two instances: (1) where injuries result from the negligent acts or omissions by public employees in connection with the operation of motor vehicles; and (2) where injuries are caused by a dangerous condition of public property created by the acts or omissions of an employee of the public entity within the course of his employment or when a public entity had notice of such condition and had sufficient time to take measures to protect the public.

*Id.* at 872 (internal citation omitted); *see also McNeill Trucking Co. v. Missouri Highway and Transp. Comm'n,* 35 S.W.3d 846, 848 (Mo. banc 2001).

■ It should be recalled that the doctrine of sovereign immunity is uniquely applicable to a governmental entity and is not applicable to an individual public official who acts as an agent of the state. *Rustici v. Weidemeyer,* 673 S.W.2d 762, 768 (Mo. banc 1984). It has been held that "[t]he abrogation of sovereign immunity [in 1977] in no way impliedly abrogated the public duty doctrine. Long beyond the time that sovereign immunity was abrogated in regard to those two situations, the public duty doctrine remained strong and viable. Missouri case law has consistently reaffirmed the doctrine." *Beaver,* 825 S.W.2d at 873; *see also Jackson v. City of Wentzville,* 844 S.W.2d 585, 587 (Mo.App. 1993).

Saliently, the court in *Warren v. State,* 939 S.W.2d 950, 957 (Mo.App.1997), held that the public duty doctrine does not protect the state when sovereign immunity has been waived under section 537.600. In making its ruling, the *Warren* court noted that it was relying on cases that involved public officers and employees and not governmental entities. *Id.* Citing to *Heins,* 859 S.W.2d at 694, and *Stacy v. Truman Med. Ctr.,* 836 S.W.2d 911, 921 (Mo. banc 1992), the court determined that,

[n]one of these cases has held that the [public duty] doctrine would protect the State from suit for a tort where Section 537.600 states that sovereign immunity for that tort has been completely waived by the State ... and we find that to apply the [public duty] doctrine in that circumstance would be contrary to the

express wording and intent of the statute.

*Warren,* 939 S.W.2d at 957.

Accordingly, "[t]he sovereign immunity doctrine is a different legal concept than the public duty doctrine which is the focus of this case." *Beaver,* 825 S.W.2d at 872. As, "[s]overeign immunity is 'uniquely applicable to governmental entities and is not transferable to an agent of that entity,'" *id.* (quoting *Rustici,* 673 S.W.2d at 768), we find the public duty doctrine does not render section 537.600 meaningless, as argued by Appellant.

In the next prong of her point relied on, Appellant asserts the public duty doctrine is an affirmative defense and, in the instant matter, has no bearing on whether a petition states a cause of action. We again disagree.

▮ The public duty doctrine is *not* an affirmative defense, but rather serves "to delineate the legal duty which the defendant official owes to the plaintiff." *Scher v. Purkett,* 847 S.W.2d 76, 78 (Mo. App.1992). Here, Appellant bore the burden of pleading facts in her petition which were sufficient to support the existence of a legal duty. *Claxton v. City of Rolla,* 900 S.W.2d 635, 636 (Mo.App.1995) (holding that "[t]o establish tort liability in a negligence action, there must be a legal duty on the part of the defendant to plaintiff."). In our review of Appellant's amended petition, nowhere is there a single assertion that Respondents owed a particularized, individual duty to Appellant, nor is there even a mention of any such "duty." Appellant was required to not only plead

facts establishing that Simpson and Weaver failed to perform a duty, but she was also required to plead facts establishing they owed an individual duty to her. *See Spotts,* 728 S.W.2d at 248. Appellant has failed to establish there was a legal duty on the part of Respondents to Appellant. *Claxton,* 900 S.W.2d at 636. Given that it was Appellant's burden to prove a legal duty, we find that her petition was inadequate to support her claim and we find nothing in her petition which would remove this matter from the long established applicability of the public duty doctrine. Appellant has failed to allege facts sufficient to support her cause of action. *See Freeman v. Leader Nat'l. Ins. Co.,* 58 S.W.3d 590, 597 (Mo.App.2001).

▮ Next, Appellant premises trial court error on the fact that in her amended petition she set out facts showing Respondents violated section 304.160 [5], which thereby abrogated their duties owed to a discrete class, in this case Appellant, as opposed to abrogating a duty owed to the public at large. According to Appellant, this breach of a duty owed specifically to her removed Respondents' negligent acts from the shield of the public duty doctrine.

▮ It has been held that when a statute, regulation, or common law rule places limitations upon an officer of the State, the officer must first be in compliance with a particular statute as a pre-requisite to the application of the public duty doctrine. *See Pace v. Pacific Fire Protection Dist.,* 945 S.W.2d 7, 10 (Mo.App.1997). However, the cases that Appellant cites in support of her proposition are cases chiefly

---

**5.** Section 304.160 states:

1. Any person who has purposely, accidentally, or by reason of an accident, dropped any tacks, nails, wire, scrap metal, glass, crockery, sharp stones, or other substances injurious to the feet of persons or animals, or to the tires or wheels of vehi-

cles, including motor vehicles, upon any highway shall immediately make all reasonable efforts to clear the highway of the substances.

2. Violation of this section shall be deemed a class C misdemeanor.

involving instances in which officers of the State failed to comply with "rules of the road" in the operation of vehicles; failed to obey traffic rules and regulations; or, failed to abide by other police power measures.[6]

Here, the statute Appellant claims Respondents were required to comply with as a pre-requisite to the assertion of their immunity under the public duty doctrine is a general statute which criminalizes the intentional placement of such objects as "tacks, nails, wire, scrap metal, glass, crockery, [and] sharp stones ..." on the highways of Missouri. *See* § 304.160. We are not convinced that the items Respondents placed on the highway in question would meet that category of objects proscribed by section 304.160. In either event, we determine that any threat of harm presented by any gravel or oils errantly left on the roadway was to the public in general and not to Appellant as an individual.

 Appellant has failed to state in her second amended petition how Respondents owed a personal duty to her to either comply with section 304.160 or to personally make "reasonable efforts to clear the highway of the substances." § 304.160. Appellant, in an attempt to avoid the public duty doctrine, suggests that she is a member of a "discrete class— persons utilizing Missouri's public roads" and, without citation to authority, argues that "[a] duty owed to motorists using Missouri's public highways is not a duty 'owed to the public at large.'"[7] However, because it has been held that "[t]he duty of MHTC and its employees to properly design and construct highways runs to the public at large," *Heins*, 859 S.W.2d at 695, we believe the duty to properly repair highways also runs to the public at large. Further, "[o]ur courts have broadly construed the meaning of public duties...." *Cooper*, 857 S.W.2d at 479. The public duty doctrine " 'recognizes that the duties of public officers are normally owed only to the general public and that a breach of such a duty will not support a cause of action by an individual injured thereby.'" *State ex rel. Southers v. Stuckey*, 867 S.W.2d 579, 582 (Mo.App.1993) (quoting *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 445 (Mo. banc 1986)). Here, Appellant has not demonstrated that section 304.160 serves the "special, direct, and distinctive interests" of individual members of the public. *See Twiehaus*, 706 S.W.2d at 445. Sub-point denied.

 Lastly, Appellant asserts trial court error on the basis that the trial court incorrectly determined Respondents were shielded by the public duty doctrine, even though they were acting in a ministerial capacity. Suffice to say, under the "public duty doctrine, a public employee is not civilly liable—even for a breach of a ministerial duty—if that duty is owed to the general public rather than to a particular individual." *Jungerman*, 925 S.W.2d at 205. Sub-point denied. " 'A citizen has no

---

**6.** For example, in *McGuckin v. City of St. Louis*, until the fire crew at issue activated their emergency lights "in compliance with [section 304.022.4, they were] bound by the same rules of the road as other drivers, and [were] afforded no special immunity for negligent acts or omissions committed by [them]." *McGuckin v. City of St. Louis*, 910 S.W.2d 842, 845 (Mo.App.1995). The *McGuckin* court further stated that section 304.022.4 "places limitations on an officer's ability to operate his vehicle in whatever manner he deems necessary" and, therefore, he was required to comply with the statute before he could disregard the traffic rules. *Id.*

**7.** Appellant also argues the "[u]se of the public highways is limited to a discrete class, persons who have passed certain tests and are licensed by the state...." However, she fails to cite authority for any such proposition.

cause of action for injuries sustained as the result of an alleged breach of public duty to the community as a whole.'" *Spotts,* 728 S.W.2d at 248 (quoting *Christine H. v. Derby Liquor Store,* 703 S.W.2d 87, 89 (Mo.App.1985)). "Failure to state a cause of action is a jurisdictional issue which may be raised any time, even on appeal." *Id.* Point denied.

The "Order and Judgment" of the trial court dismissing Appellant's second amended petition is affirmed.[8]

PARRISH, P.J., and SHRUM, J., concur.

---

8. Respondent's "Motion to Dismiss Appeal or, in the Alternative, to Strike Portions of the Legal File, Supplemental Legal File and Ap- pendix" was ordered taken with the case, and is hereby denied.