Richard H. UNDERWOOD, Appellant,

v.

Hammond C. WOODS, Robert I. Adelman, Chester B. Kaplan and G. M. Osgood, Appellees.

No. 18832.

United States Court of Appeals Eighth Circuit.

Feb. 10, 1969.

J. Whitfield Moody, of Legal Aid and Defender Society of Greater Kansas City, Kansas City, Mo., for appellant; John J. Cosgrove was with him on the brief.

Donald E. Raymond, Kansas City, Mo., for appellee Hammond C. Woods.

William I. Rutherford, of Lashly, Caruthers, Rava, Hyndman & Rutherford, St. Louis, Mo., for appellee Kaplan.

Thad C. McCanse, of James, McCanse & Larison, Kansas City, Mo., filed brief for appellee G. M. Osgood.

Before BLACKMUN, GIBSON and LAY, Circuit Judges.

BLACKMUN, Circuit Judge.

On March 15, 1966, Richard H. Underwood filed his diversity complaint pro se against his former attorneys, Hammond C. Woods, Robert I. Adelman, and Chester B. Kaplan, and against G. M. Osgood, a physician-internist. He sought damages from Woods and Adelman for negligence in defending him on a Missouri charge for felonious assault, and for slander; from Kaplan for failure to advise and for failure to sue Woods and Adelman; and from Doctor Osgood for libel and for negligence and, seemingly, malpractice.

Plaintiff Underwood, who is not a lawyer, tried the case himself. He was his own primary witness. One other person, a second cousin, testified briefly

for the plaintiff. On the defense side only Doctor Osgood testified. The three lawyer defendants offered no evidence.

Chief Judge Becker, after what he described as "a loose trial", let the case go to the jury. The following verdicts were returned:

1. In favor of the plaintiff for $3,908 against Woods and Adelman on the negligence claim.

2. In favor of Woods and Adelman on the slander claim.

3. In favor of the plaintiff for $1,441 against Kaplan on the claim for failure to advise.

4. In favor of Kaplan on the claim for failure to sue.

5. In favor of Doctor Osgood on all claims asserted against him.

Underwood moved for a new trial against Doctor Osgood. Each lawyer-defendant moved for judgment notwithstanding the verdict adverse to him and, in the alternative, for a new trial. The plaintiff's motion was denied. The court, after observing, "It appeared at various stages of this proceeding that the defendants were probably entitled to summary judgments against the plaintiff on all issues", and that it had allowed a plenary trial before a jury "in order that a full and complete record be made and that the plaintiff be given the fullest opportunity to establish his claims for relief", granted the respective motions for judgment notwithstanding. It did so on the stated grounds that (1) the negligence claim against Woods and Adelman was barred by the applicable Missouri statute of limitations, (2) the plaintiff failed, in any event, to make a submissible case of negligence against Woods and Adelman and was guilty of contributory negligence as a matter of law, and (3) the plaintiff failed to make a submissible case against Kaplan on the claim for failure to advise. In accord with Rule 50(c) (1), Fed.R.Civ.P., the court also ruled that, if its entry of judgment notwithstanding was thereafter reversed, the lawyer-defendants' alternative motions for a new trial were granted. The stated grounds were that the verdicts were against the weight of the evidence and that the rulings of the court in admitting evidence and in giving instructions were prejudicial to those defendants.

Plaintiff Underwood has appealed. By orders of the district court and of this court the case was submitted on the original files and the plaintiff was granted further relief pursuant to 28 U.S.C. § 1915(b) and (d), rather rare in civil cases, namely, the preparation of the transcript at government expense and the appointment of counsel for the plaintiff on the appeal. Mr. J. Whitfield Moody, Executive Director of the Legal Aid and Defender Society of Greater Kansas City, Jackson County, Missouri, was so appointed. Mr. Moody filed a brief and argued the case orally. He has rendered excellent professional services on behalf of the plaintiff-appellant. We are grateful to Mr. Moody for those services. Mr. Underwood has also filed a pro se brief which we have carefully considered.

*The facts.* In 1960 plaintiff Underwood, then age 41, rented a farm in Platte County, Missouri. One of the houses on the farm was occupied by a family named Munshaw. Underwood became friendly with that family and on one occasion was invited to have a meal at their house. There he met a man named Richard Roth, whose correct name, he later learned, was Burton, and a woman named Blount. On Saturday evening, September 3, 1960, they all went swimming at a nearby lake. An altercation ensued and Underwood was struck by both Burton and Mrs. Munshaw. He drove off in his truck but it stalled and he walked the rest of the way in the dark to his house. He dressed and started back to the truck. Burton and Miss Blount appeared and Burton told him to get off the farm or

he would kill him. Underwood had a pistol at the time and Burton was shot.[1]

Underwood was arrested that Saturday night. On Monday, Labor Day, he called Woods. Woods came from Kansas City to Platte City on Tuesday. Underwood paid him a $1000 retainer fee. Woods employed Adelman to assist him. Before Woods was employed Underwood had waived preliminary examination. Underwood also paid Woods $400 from which he was to pay a fee to a bondsman named Fields.

On October 20 an information was filed charging Underwood with felonious assault upon Burton.[2]

Underwood apparently then asked Woods to do two things. The first was to have photographs taken of Underwood in order to show the beating he had received. Woods referred him to a Kansas City studio and this was done. The second was to take the depositions of Burton, while he remained in Platte County, and of Miss Blount. These depositions were never taken. Underwood learned that Burton was on parole from the Illinois penitentiary. When Burton recovered from his wound, he returned to Illinois. Woods, however, thereafter suggested that he and Adelman go to Illinois to take Burton's deposition. He wanted Underwood to pay the expenses of that trip. Underwood did not refuse to let Woods go to Illinois or to pay those expenses.

Woods suggested that Underwood be examined by Doctor Osgood in order to determine whether the blow to the head he had received had injured him to the point where he did not know what he was doing when Burton was shot. Underwood accepted this suggestion and consulted Doctor Osgood on December 6, 1960. Head xrays were taken. The doctor discussed these with Underwood and told him "he thought he could get a defense up" for him. At the trial Doctor Osgood testified that, after his examination of Mr. Underwood, his diagnosis was that the patient was a schizophrenic paranoid; that, in his opinion, he was still in that condition at the time of the trial; that he probably did not know the difference between right and wrong at the time of the shooting; that one of the head xrays revealed a difference in contour and bone thickness "highly suggestive of an old injury", that is, one at least six months old; and that "There is a reasonable possibility that this plays a part in his mental disturbance."

In February 1961 Woods filed a motion for leave to withdraw as attorney of record for Underwood and cited Missouri Supreme Court Rule 4.44. He alleged, in support of the motion, lack of cooperation, antagonism, and threats by Underwood; refusal to communicate; and disregard of an agreement as to

---

1. The plaintiff testified as to this incident:

   "So I had a little pistol in my house, and I thought, well, I was going to go back and get my truck, see what they was doing to it. So I thought, 'I will just take that little pistol along with me just in case they chuck me again.'

   "When I got out of the house I was thinking they was still back to my truck. When I came out of my house, I hadn't gone more than ten or fifteen feet when this Burton and this girl friend of his, Loretta Blount, came out of the Munshaw house and came directly toward me. I didn't think they were home yet but they were watching for me to come out. When they got within as close as from here to possibly the first row of seats back there, this man Richard Burton threatened me. He says, 'Get off of

   the farm or I will kill you.' Those are the exact words he said to me. Whether he had a weapon to kill me with, whether he really intended to kill me, whatever happened, whatever his intention was, what he had to kill me with or that, I do not know. I didn't ask him any questions or anything.

   "I had my little gun that time. I didn't have it with me at the lake but I had it then. I just threw it out and shot and he fell to the ground. And there was someone come by the window in the Munshaw house, so I shot again. And the next shot was fired in the air. And the next shot was fired in the air. And the next shot was fired in the air. Charles Eugene Burton was only shot once. * * *"

2. Presumably under V.A.M.S. § 559.180 (1949).

fees and expenses. Underwood in his testimony asserted that these grounds were not true. However, he, Woods and Adelman appeared in the state court on February 27, 1961. At that time Underwood stated that he felt the lawyers were not being fair with him or exercising reasonable care in his case but he agreed that the court might let them withdraw. They were permitted to withdraw by formal order entered on that day.

Underwood consulted Mr. Kaplan. He paid Kaplan a retainer of $250 on March 2, 1961. After a few days Kaplan said he would accept the case but wanted a fee of $2,500. Underwood paid him $1,000 more on March 8 and the balance of $1,250 on April 25. Underwood's check of March 8 carried a recital reading, "This to include all expense thru trial."

After Mr. Kaplan took Underwood's case, he wrote Doctor Osgood for a report of his examination of the plaintiff. In response, the doctor wrote Kaplan a letter dated March 12, 1962. This letter mentioned what the doctor felt was an old head injury and recited that in the course of examination of Mr. Underwood he formed "the definite opinion that at the time he is alleged to have committed the crime for which he is charged that he did not know right from wrong, and I strongly suspect that this mental state is not limited to that time only."

The criminal charge against Underwood was eventually dismissed in March 1962, prior to trial, when the state, upon its own investigation, was satisfied as to the psychiatric situation. Underwood in his testimony conceded that Kaplan had discussed the possibility of dismissal with him but later objected because he wanted an acquittal in order to prevent a refiling of the charge against him.

Underwood testified that he kept insisting that Kaplan sue Woods and Adelman; that Kaplan was not interested in doing so; that the lawyer knew Underwood intended to sue the former attorneys; that he and Kaplan had an oral agreement "that he [Kaplan] would handle any civil suit that I would want to come up with after the trial was over"; that, however, Kaplan "didn't say he would sue these two attorneys", and

"THE COURT: You say then that he agreed to sue anyone you and he both agreed had done you wrong after the termination of the criminal case?

MR. UNDERWOOD: That's right."

Before taking up the several issues raised by the appeal we feel compelled to observe that Chief Judge Becker was most considerate throughout the course of the trial and was extraordinarily lenient in his rulings.

A. *The claim against Doctor Osgood.* This fails for multiple reasons. As has been noted, the claim sounds in libel, perhaps in malpractice, and in negligence.

1. The libel aspect. The complaint was filed March 15, 1966. The allegedly libelous material is the content of the letter written by Doctor Osgood to Mr. Kaplan on March 12, 1962. Underwood's position is that he had sustained no earlier injury to his head and that the physician's statement, to the effect that he suspected the plaintiff's inability to tell right from wrong was not limited to the time of the Burton incident, was damaging to the plaintiff. But in Missouri an action for libel or slander must be commenced within two years. V.A.M.S. § 516.140 (1949). Brown v. Chicago, R. I. & P. R. R., 323 F.2d 420 (8 Cir. 1963), affirming Judge Oliver's decision reported at 212 F.Supp. 832 (W.D.Mo.1963). The libel claim, on the face of the complaint, is thus barred. The plaintiff has not brought himself within any of the tolling provisions of V.A.M.S. § 516.170. Hellebrand v. Hoctor, 331 F.2d 453, 454–455 (8 Cir. 1964). Furthermore, Doctor Osgood's letter was in response to Mr. Kaplan's own written request made when Kaplan was counsel for Underwood. The lawyer in his letter to Doctor Osgood stated that "the law requires that we furnish a copy of the report to the other side prior to trial." Doctor Osgood's response there-

fore was a letter written in good faith to Underwood's own lawyer at the lawyer's request about an examination made at the suggestion of the predecessor attorney and for a purpose specifically connected with the defense Kaplan was handling for Underwood and of assistance in that defense. Wholly apart from the question whether the letter could be regarded as defamatory at all, its writing and its receipt, under these circumstances, particularly with no proof of malice whatsoever, were privileged under Missouri law and do not support a defamation action. Hellesen v. Knaus Truck Lines, Inc., 370 S.W.2d 341, 345–347 (Mo.Sup.1963); Pulliam v. Bond, 406 S.W.2d 635, 641 (Mo.Sup. 1966); Williams v. Kansas City Transit, Inc., 339 S.W.2d 792 (Mo.Sup.1960); Merkel v. Carter Carburetor Corp., 175 F.2d 323, 327–328 (8 Cir. 1949). See Wells v. Belstrat Hotel Corp., 212 App. Div. 366, 208 N.Y.S. 625, 627–628 (1925); 53 C.J.S. Libel and Slander § 95 (1948); 33 Am.Jur., Libel and Slander, § 93 (1941).

■ 2. The malpractice aspect. The claim of malpractice, if the complaint may be regarded as containing such a claim, necessarily centers in the examination of the plaintiff made by Doctor Osgood on September 6, 1960. As noted above, however, Underwood's complaint was filed only on March 15, 1966. V.A. M.S. § 516.140 also provides, "All actions against physicians * * * for damages for malpractice, error, or mistake shall be brought within two years from the date of the act of neglect complained of * * *." Again, in the absence of any application of the tolling statute (which no one has suggested), the malpractice claim, on the face of the complaint, is barred. National Credit Associates, Inc. v. Tinker, 401 S.W.2d 954 (Mo.App.1966).

Furthermore, whether we apply the federal or the Missouri test for the sufficiency of the evidence to support a jury verdict, see Lewis v. Nelson, 277 F.2d 207, 209–210 (8 Cir. 1960), the evidence here, under either standard, is suffi- ciently supportive. Doctor Osgood testified that the x-rays were made by a registered and competent technologist with the best of equipment and in the conventional manner; that the normal amount of radiation was employed; that he was absolutely certain there was no overexposure; and that if every tooth could not be seen and counted, the x-rays would not be diagnostic.

■ 3. The negligence aspect. The apparent suggestion here is that Doctor Osgood was unable to determine that the beating the plaintiff received rendered him incapable of knowing right from wrong, that he therefore should not have concluded that he was a schizophrenic paranoid and had been for a long time, and that he should not have concluded that the condition was due to an earlier injury. Here again there is adequate supportive evidence for the jury's findings. The doctor testified that his opinion regarding Underwood's mental condition was true and made in good faith and in accord with the disciplines and procedures of his profession. He also stated that, after listening to the plaintiff's testimony during the trial, his opinion had not changed and that the plaintiff, at the time of the trial, was in the same mental state as when he examined him in 1960. The jury chose to believe the doctor. They are entitled so to do.

The judgment in favor of Doctor Osgood must therefore stand.

■ B. *The claim against Woods and Adelman.* What we have said above with respect to the libel aspect of the plaintiff's claim against Doctor Osgood is equally applicable to the slander claim against Woods and Adelman and that claim is barred under V.A.M.S. § 516.-140.

■ His claim against these attorneys, so far as it rests on negligence, is subject to a 5-year limitation period under V.A.M.S. § 516.120. Judge Becker held, as an alternative ground of his decision, that the negligence claim was barred. We agree. The plaintiff con-

cedes that his employment of these attorneys terminated at the court hearing on February 27, 1961. His complaint was filed only on March 15, 1966. Five years had thus elapsed. The plaintiff attempts to avoid the bar of the statute by arguing that he tried to file his complaint with the clerk of the United States District Court for the Western District of Missouri in 1964; that it was refused at that time; that he retyped it; that on February 26, 1966, he mailed it to the clerk; and that it was not filed until March 15, 1966. There is, however, no proof in the record of these alleged facts. Underwood asserts them only in an unverified memorandum brief filed with the district court. This is not legal proof of allegations in his brief. We therefore are left only with the fact that more than 5 years elapsed between the conclusion of the rendition of services for Underwood by Woods and Adelman and the filing of his complaint for negligence on their part.

■ Underwood also would avoid the bar of the statute by a suggestion of estoppel. It is conceded, however, that the defense did nothing to deceive the plaintiff or to delay the filing of his lawsuit. In the absence of evidence of that type estoppel, of course, does not lie. Martin v. Potashnick, 358 Mo. 833, 217 S.W.2d 379, 382 (1949); Sugent v. Arnold's Estate, 340 Mo. 603, 101 S.W.2d 715, 718 (1937).

■ However, even if we assume that the bar of the statute does not apply on the negligence claim, we still find ourselves in agreement with the district court. This is so for a number of reasons. First, there can be no negligence with respect to Underwood's demand that pictures be taken of him. That request was complied with. Second, the depositions of Burton and of Miss Blount could not be taken as steps in the defense of a criminal action against Underwood until an indictment or information was filed. Missouri Criminal Rule 25.10, V.A.M.R. authorizes a defendant "in any criminal case pending in any court" to obtain the deposition of a witness. The Supreme Court of Missouri, sitting en banc, has stated that "a criminal case is not instituted or pending [within the meaning of Rule 25.10] until an information is filed or an indictment returned." State ex rel. Woods v. Ratliff, 322 S.W.2d 864 (Mo.Sup.1959). The case against Underwood became "pending" when the information against him was filed on October 20, 1960. Negligence on the part of Woods and Adelman cannot be predicated upon their failure to take the requested depositions prior to October 20. Third, Underwood, of course, has the burden of proof. This record does not disclose that Burton or Miss Blount were still in Missouri at the time the information was filed. In his personal brief Underwood states that the criminal case "was filed several weeks later after Burton had left the State of Missouri." Fourth, Underwood by his own testimony states that Mr. Woods suggested, after the information was filed, that the Burton and Blount depositions be taken. Fifth, although Underwood testified, "I did not, in any way whatsoever, refuse to let him go back to Illinois" and "I did not keep him from going back to Illinois", and did not refuse to pay his expenses of going to Illinois, he later said of Woods and Adelman, "They wanted me to give them permission to go back to Illinois and get depositions. I did not give them my permission. * * *" Still later he testified "I refused to give him my information—my permission." His stated reason for this refusal was that he wanted the depositions taken in Missouri and "it was not my idea to let Burton or Loretta Blount escape out of the state of Missouri. * * * They could have kept them here." Sixth, there is no expert testimony in support of the plaintiff's claim of negligence. See Gabbert v. Evans, 184 Mo.App. 283, 166 S.W. 635, 638 (1914). Seventh and clinchingly, there is no proof of injury to the plaintiff due to any negligence of Woods and Adelman. They were employed to defend him against the crimi-

nal charge. The criminal case was ultimately dismissed. Gabbert v. Evans, supra, 166 S.W. at 638; Roehl v. Ralph, 84 S.W.2d 405, 409 (Mo.App.1935); National Hollow Brake Beam Co. v. Bakewell, 224 Mo. 203, 123 S.W. 561, 567 (1909); Johnson v. Haskins, 119 S.W.2d 235 (Mo.Sup.1938); RePass v. Vreeland, 389 F.2d 981 (3 Cir. 1968), cert. denied 392 U.S. 907, 88 S.Ct. 2061, 20 L.Ed. 2d 1365. At oral argument, in response to an inquiry from the court, it was suggested that damage lay in delay and that injury was inferable in that taking the requested depositions earlier may have prompted an earlier dismissal of the case; in that the plaintiff was entitled to a dismissal on the merits and not because of a mental condition; in that he was sent to Doctor Osgood rather than to a psychiatrist; and in that the attorneys' actions may have occasioned additional fees. We see nothing in this record which lends significant legal support to these suggestions.

C. *The claim against Kaplan.* This was for failure to advise and for failure to sue Woods and Adelman.

The most we can evolve from this record favorable to the plaintiff's side is that Kaplan agreed to defend the criminal case through trial, to defend any civil actions against Underwood which might arise out of the matter, and to sue anyone whom plaintiff and Kaplan agreed had wronged the plaintiff. There is no evidence of agreement between plaintiff and Kaplan to sue Woods and Adelman and the jury verdict unfavorable to the plaintiff as to that aspect is fully supported. The criminal case was never brought to trial and there were no civil actions against the plaintiff arising out of the general situation. Plaintiff's claim against Kaplan, therefore, centers in the hazy area of failure to advise. But Underwood's own testimony reveals the presence of advice. He said that Kaplan suggested that he plead to a lesser charge; that he and the attorney "had a very good talk"; and that they had discussed a possible change of venue. With the record in this state,

with the absence of expert testimony to establish applicable and proper standards, with the serious criminal case dismissed, and with the absence of demonstrated injury, the case against Kaplan for failure to advise necessarily falls.

Affirmed.