Christopher M. KUEHNE, Appellant,

v.

Susan L. HOGAN, Respondent.

No. WD 71130.

Missouri Court of Appeals,
Western District.

June 8, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 27, 2010.

Application for Transfer Denied
Sept. 21, 2010.

Christopher Kuehne, Appellant pro-se.

Kathleen R. Robertson, for Respondent.

Before Division Two: JOSEPH M. ELLIS, Presiding Judge, VICTOR C. HOWARD, Judge and JAMES E. WELSH, Judge.

VICTOR C. HOWARD, Judge.

Christopher Kuehne appeals the trial court's judgment dismissing his legal malpractice action. On appeal, Kuehne contends that the trial court erred in dismissing his petition because it stated a claim for malpractice against his post-conviction attorney. The judgment of the trial court is affirmed.

**Factual and Procedural Background**

In 1998, Christopher Kuehne was charged with the first degree statutory rape and first degree statutory sodomy of his daughter ("Daughter"). At trial, Connie Guerrero, Kuehne's ex-girlfriend and Daughter's mother ("Mother"), testified that Daughter had told her that Kuehne had been sexually abusing her. Daughter, who was ten years old at the time of the trial, testified regarding the abuse that had occurred when she was six or seven years old.

Kuehne's defense at trial was that Mother and Daughter's allegations were false. He sought to convince the jury that Mother had a history of making false allegations of sexual abuse and that Mother had fabricated the current allegations and influenced Daughter to falsely accuse Kuehne. In support of this theory, Kuehne's trial counsel elicited testimony from Mother in which she admitted that she had made previous allegations of sexual abuse against Kuehne and that the Division of Family Services had found her allegations to be unsubstantiated.

The jury convicted Kuehne of the charges. This court affirmed Kuehne's convictions on direct appeal. *See State v. Kuehne*, 37 S.W.3d 298 (Mo.App. W.D. 2000). Kuehne then filed a Rule 29.15 motion for post-conviction relief in which he asserted that his trial counsel provided ineffective assistance of counsel by failing to call four witnesses that would have supported Kuehne's defense theory. The motion court denied the motion without an evidentiary hearing.

On appeal, this court reversed and remanded Kuehne's Rule 29.15 motion for a hearing on the issue of whether his trial counsel was ineffective for failing to call the four witnesses. *See Kuehne v. State*, 107 S.W.3d 285, 301 (Mo.App. W.D.2003). In his motion, Kuehne alleged that, if called to testify, Greg Guerrero, Mother's ex-husband, would have testified that Mother had previously falsely accused him of sexually abusing his and Mother's daughter, Carly Guerrero. Kuehne further alleged that Carly Guerrero would have testified that Mother continually insisted Carly's father or Kuehne had touched her inappropriately although Carly told her that nothing inappropriate had occurred.

Kuehne also alleged that his trial counsel should have called Daughter's guardian ad litem to testify because she would have testified regarding Mother and Daughter's failure to attend a meeting in which a therapist was to observe Kuehne's interactions with Daughter. Finally, Kuehne alleged that his trial counsel should have called Kuehne's former criminal attorney to testify. His former attorney would have testified that Mother provided police officers with a videotape that allegedly contained evidence of Kuehne abusing Daughter but that, after viewing the video, the police ceased their investigation of Kuehne.

This court found that, if these four witnesses testified as Kuehne said they would, their testimony would impeach Mother's credibility and support Kuehne's defense

that Mother had fabricated the sexual abuse allegations against him. Thus, the case was remanded for a hearing on whether Kuehne's trial counsel was ineffective in failing to present the testimony of the four witnesses. On remand, Susan Hogan, a public defender, served as Kuehne's post-conviction counsel. At the hearing, Hogan presented the testimony of Kuehne and Kuehne's trial counsel and did not call any of the four witnesses to testify. The motion court denied Kuehne's Rule 29.15 motion, finding that Kuehne's testimony as to what the four witnesses' testimony would be was speculative and insufficient to prove his allegations of ineffective assistance of counsel. This court affirmed the motion court's denial of Kuehne's Rule 29.15 motion. *See Kuehne v. State,* 182 S.W.3d 266 (Mo.App. W.D.2006).

After the denial of his Rule 29.15 motion was affirmed,[1] Kuehne filed a petition against Hogan, claiming that she had committed legal malpractice by not calling the four witnesses to testify at the Rule 29.15 motion hearing. Kuehne alleged that, based on his instructions and the ruling of this court which remanded his Rule 29.15 case for a hearing, Hogan had a duty to call the four witnesses to testify at the hearing. He contends that, but for Hogan's failure to call the witnesses, he would have won his Rule 29.15 hearing. Kuehne seeks both compensatory and punitive damages.

Hogan filed a motion to dismiss Kuehne's petition, arguing that Kuehne failed to state a claim for legal malpractice and that she was protected by the doctrine of official immunity. The trial court granted the motion and dismissed the case with prejudice. This appeal by Kuehne followed.

**1.** Prior to his malpractice action, Kuehne also filed a federal habeas petition, which was denied.

## Standard of Review

"The standard of review for a trial court's grant of a motion to dismiss is *de novo.*" *Lynch v. Lynch,* 260 S.W.3d 834, 836 (Mo. banc 2008). Where, as here, the trial court does not indicate why it dismissed the petition, we will presume it was for a reason stated in the motion to dismiss and will affirm if dismissal was appropriate on any ground stated therein. *Costa v. Allen,* 274 S.W.3d 461, 462 (Mo. banc 2008).

A motion to dismiss for failure to state a claim " 'is solely a test of the adequacy of the plaintiff's petition.' " *LeBlanc v. Research Belton Hosp.,* 278 S.W.3d 201, 204 (Mo.App. W.D.2008) (quoting *Pikey v. Bryant,* 203 S.W.3d 817, 821 (Mo.App. S.D.2006)). When reviewing the dismissal of a petition for failure to state a claim, we treat all facts alleged in the petition as true "and liberally grant[ ] to plaintiff all reasonable inferences therefrom." *Reynolds v. Diamond Foods & Poultry, Inc.,* 79 S.W.3d 907, 909 (Mo. banc 2002). However, we must disregard conclusions which are not supported by the facts pled. *Ford Motor Credit Co. v. Updegraff,* 218 S.W.3d 617, 621 (Mo.App. W.D.2007). If the plaintiff's petition "sets forth any set of facts that, if proven, would entitle the plaintiff[ ] to relief, then the petition states a claim." *Lynch,* 260 S.W.3d at 836. Thus, the petition is reviewed "to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case." *Reynolds,* 79 S.W.3d at 909.

## Discussion

In his sole point on appeal, Kuehne contends that the trial court erred in dismiss-

ing his petition because he stated a claim for legal malpractice against his post-conviction attorney.[2] He claims that his petition contained allegations sufficient to establish each element of legal malpractice and that Hogan is not entitled to official immunity.

 In order to survive a motion to dismiss, a plaintiff must allege facts sufficient to support the following four elements of a legal malpractice claim: (1) the existence of an attorney-client relationship; (2) negligence or a breach of contract by the attorney; (3) proximate causation of the plaintiff's damages; and (4) damages to the plaintiff. *See Fox v. White*, 215 S.W.3d 257, 260 (Mo.App. W.D. 2007). Therefore, the plaintiff must allege facts demonstrating "a causal connection between his or her attorney's negligence and the resulting injury." *Collins v. Mo. Bar Plan*, 157 S.W.3d 726, 732 (Mo.App. W.D.2005). In the context of a malpractice action, the plaintiff must establish causation by alleging that, " 'but for the attorney's negligence, the result of the underlying proceeding would have been different.' " *Id.* (quoting *Rodgers v. Czamanske*, 862 S.W.2d 453, 458 (Mo.App. W.D.1993)).

 Although there are no Missouri cases addressing whether a plaintiff may maintain a malpractice cause of action against his post-conviction attorney, there are several Missouri cases which address the elements a plaintiff must prove in a malpractice action against his trial counsel. *See, e.g., State ex rel. O'Blennis v. Adolf,* 691 S.W.2d 498 (Mo.App. E.D.1985). In *O'Blennis*, the court found that, where the plaintiff had been convicted of a crime and thereafter sued his trial counsel for malpractice, factual innocence of the criminal

charge was an indispensable element of his cause of action. *Id.* at 503. Such cases also require the plaintiff to "allege and establish that the actions or omissions by [the trial attorney] prevented [the plaintiff's] acquittal." *Johnson v. Schmidt,* 719 S.W.2d 825, 826 (Mo.App. W.D.1986).

While Missouri cases rejecting malpractice claims against à criminal defendant's trial counsel have been decided, in part, based on the principles of collateral estoppel, those cases also emphasize public policy concerns associated with such claims. For instance, in *O'Blennis,* the court concluded that to permit the continuation of the malpractice claim without requiring a showing of innocence would allow the convicted criminal " 'to profit by his own fraud, or to take advantage of his own wrong, or to found a claim upon his iniquity, or to acquire property by his own crime.' " *O'Blennis,* 691 S.W.2d at 504 (quoting *McCallop v. Laspy* (*In re Estate of Laspy* ), 409 S.W.2d 725, 728 (Mo.App. 1966)). As such, the court found that it was "against public policy for the suit to continue in that it 'would indeed shock the public conscience, engender disrespect for courts and generally discredit the administration of justice.' " *Id.* (quoting *Laspy,* 409 S.W.2d at 737).

In light of the aforementioned cases, Hogan argues that, because Kuehne's claim is premised on a challenge to the factual basis of his conviction, Kuehne must allege that he is actually innocent of the charges in order to prove causation and damages. Kuehne contends that cases such as *O'Blennis* and *Johnson* do not apply to his claim in that he is attempting to maintain a malpractice claim against his post-conviction counsel, rather

---

**2.** Although Hogan makes arguments regarding a purported breach of fiduciary duty claim, it appears from Kuehne's petition and brief on appeal that his only claim is one of legal malpractice based on Hogan's alleged negligence. Therefore, we do not address Hogan's arguments regarding a breach of fiduciary duty claim.

than his trial counsel. Kuehne asserts that, in order to withstand a motion to dismiss his malpractice claim against his post-conviction counsel, he must allege only that, but for Hogan's negligence, he would have won his Rule 29.15 hearing.

Although there are no Missouri cases dealing with the specific issues raised in this appeal, we find the reasoning of a recent Wisconsin case addressing a similar issue to be persuasive. *See Tallmadge v. Boyle*, 300 Wis.2d 510, 730 N.W.2d 173 (2007). In *Tallmadge*, the Wisconsin Court of Appeals addressed the question of whether a convicted defendant was required to prove actual innocence when pursuing a malpractice claim against an attorney he hired to file a writ of habeas corpus. *Id.* at 525.

After the defendant was convicted of fifteen counts of sexual assault and the convictions were affirmed on appeal, he retained an attorney to file a writ of habeas corpus to secure post-conviction relief. *Id.* at 514–16. When the attorney failed to file a federal or state writ, the defendant filed an action against the attorney alleging legal malpractice. *Id.* at 517–18. The defendant argued that, because the attorney failed to file a writ of habeas corpus, the defendant lost his opportunity to file a writ, which prevented him from prevailing on the writ and obtaining a new trial. *Id.* at 523. The defendant also argued that he did not have to prove actual innocence because he was suing his post-conviction attorney rather than his trial counsel. *Id.* at 525.

The Wisconsin Court of Appeals nevertheless held that the defendant had to prove that he was actually innocent of the underlying criminal charges, noting that the actual innocence requirement is not limited to only criminal defendants who sue their former trial attorneys for malpractice. *Id.* The court listed several public policy considerations in support of its finding, including the concerns that permitting a convicted criminal to pursue a legal malpractice claim without requiring proof of innocence would allow the criminal to be indirectly rewarded for his crimes and would shock the public conscience. *Id.*

We similarly find that the public policy concerns underlying the actual innocence requirement in the context of a malpractice suit against a criminal trial attorney apply equally to cases involving a criminal defendant's post-conviction counsel. Therefore, Kuehne's innocence of the criminal charges for which he was convicted is essential to satisfy the causation element of his claim. Although Kuehne asserted in his petition that he is an innocent man, his allegation is merely a bare conclusion without factual support. The fact of his guilt was previously determined when he was convicted of the criminal charges, and Kuehne is therefore barred from asserting a collateral civil claim where actual innocence is an essential element.[3]

Kuehne argues that to prevail in his cause of action he need only prove that, absent his attorney's negligence, he would have won his Rule 29.15 motion and received a new trial. That is a proposition that is hard to swallow since it could lead to a quite unhandy and repugnant scenario where a convicted inmate wins a damage award from the confines of his jail cell without ever establishing his innocence. In a case where a criminal defendant sues his post-conviction attorney for malprac-

**3.** This court reached the same conclusion in a case with similar facts which is handed down contemporaneously with this case. *See Costa v. Allen*, 323 S.W.3d 383, 387 (Mo.App. W.D. 2010) (holding that a criminal defendant's malpractice claim against his post-conviction counsel was barred by the presumption of guilt imposed by a final judgment of conviction).

tice, success means not merely obtaining a new trial, but being acquitted of the charges at a new trial. Kuehne has not sufficiently alleged facts to support the element of causation where he cannot show that, but for his post-conviction attorney's actions, he would have been acquitted at a new trial.[4] The four witnesses that Kuehne claims should have been called purportedly would have impeached Mother's credibility and, therefore, could have, at best, caused the motion court to find that Kuehne's trial counsel was ineffective, grant his Rule 29.15 motion, and order a new trial. Even so, that does not equate to an acquittal at the new trial. Kuehne did not allege in his petition that he would have won the new trial if one had been ordered. Ultimately, even if Kuehne had made such a claim, and we take his allegations of negligence as true, any assertion that he would have been acquitted at a new trial but for Hogan's actions is purely speculative.

For these reasons, Kuehne has failed to state a legal malpractice claim against his post-conviction attorney. Because we find that Kuehne failed to state a claim for malpractice, we do not reach the issue of official immunity. The judgment of the trial court is affirmed.

Judge WELSH concurs.

Judge ELLIS concurs in separate concurring opinion.

---

**4.** The court in *Tallmadge* similarly held that the criminal defendant had presented insufficient evidence of causation where he could not show that, but for his post-conviction attorney's conduct, he would have been successful not only in obtaining a new trial, but in obtaining an acquittal at a new trial. *See Tallmadge*, 300 Wis.2d at 524–25 (finding that any assertion that, but for the post-conviction attorney's actions, the defendant "would be a free man [was] purely speculative.").

**1.** My concern is equally applicable to the majority opinion in *Costa v. Allen*, No. WD

JOSEPH M. ELLIS, Judge, concurring.

I concur in the result reached by the majority, namely, affirming the trial court's dismissal of Kuehne's petition with prejudice. I am troubled, however, by the majority's adoption of an actual innocence standard for malpractice cases brought by criminal defendants.[1] The effect is to carve out what I perceive to be an unnecessary exception to long and well-settled tort law relating to professional negligence by attorneys and to create the potential for absurd results. It is my view that there is no need for such an exception because public defenders, such as Susan Hogan in this case, are shielded from liability for damages by the doctrine of official immunity.

While the issue of whether public defenders are protected from malpractice claims by official immunity has been touched on in at least two prior Missouri cases, the question remains a matter of first impression in this State. In *Johnson v. Schmidt*, 719 S.W.2d 825 (Mo.App. W.D. 1986), the plaintiff's malpractice action against a public defender who represented him in his criminal case was found to be premature and "the question of whether respondent [public defender] is protected from such claims by the doctrine of official immunity is neither reached nor ruled." *Id.* at 826. In addition,[2] this Court addressed the subject in an earlier appeal of

71055, (Mo.App.W.D.[date]), a case with similar facts being handed down contemporaneously with this case.

**2.** The question was also raised in a federal case involving application of Missouri law but was not decided as the court held that the underlying action was barred by the statute of limitations. *Underwood v. Woods*, 406 F.2d 910 (8th Cir.1969). A federal court decision on the issue would not have been binding on Missouri courts in any event. *Scott v. Blue Springs Ford Sales, Inc.*, 215 S.W.3d 145, 167 (Mo.App. W.D.2006).

our companion case today, *Costa v. Allen,* No. W.D. 71055, 2008 WL 34735 (Mo.App. W.D. Jan. 2, 2008); but after opinion in this Court, the Missouri Supreme Court accepted transfer, rendering this Court's opinion in that case for naught and of no precedential value. *Philmon v. Baum,* 865 S.W.2d 771, 774 (Mo.App. W.D.1993).

Nevertheless, I would be remiss if I did not mention that the opinion issued by this Court in that first *Costa* case held that the doctrine of official immunity did not extend to public defenders. That opinion suggests that the result it reached was consistent with the majority of foreign jurisdictions. However, a careful review of case law from around the country leads me to the conclusion that the vast majority of jurisdictions extend immunity to public defenders in one form or another, whether it be judicial immunity, statutory immunity, official immunity, or some variation thereof. Moreover, some of the case law relied on in our prior opinion is mischaracterized. For instance, the opinion quotes a Pennsylvania Supreme Court decision, *Reese v. Danforth,* 486 Pa. 479, 406 A.2d 735 (1979), as supporting its holding. But Pennsylvania denied immunity to public defenders strictly because that state's official immunity doctrine established by common law *only applies to policy-making officials* and does not extend to "mere public employees." *Id.* at 737. Since Missouri common law extends immunity to employees, *Reese* is not remotely on point. Suffice it to say that my research leads me to the conclusion that our prior withdrawn opinion addressing the issue was incorrect.[3] In the analysis that follows, I comment on virtually all of the arguments made in the origi-

nal *Costa* opinion without further express reference to that opinion.

The United States Supreme Court has left the question of immunity to the states, noting that "when state law creates a cause of action, the State is free to define the defenses to that claim, including the defense of immunity, unless, of course, the state rule is in conflict with federal law." *Ferri v. Ackerman,* 444 U.S. 193, 198, 100 S.Ct. 402, 406, 62 L.Ed.2d 355 (1979). In *Tower v. Glover,* 467 U.S. 914, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984), while holding that public defenders have no immunity from § 1983 liability for intentional conspiratorial misconduct, the Supreme Court observed that the states may well provide immunity to public defenders against tort claims arising under state law and may even provide protection for intentional acts. After noting that few state appellate courts had yet addressed the general issue of public defender immunity, the Supreme Court further stated:

> Immunities in this country have regularly been borrowed from the English precedents, and the public defender has a reasonably close 'cousin' in the English barrister. Like public defenders, barristers are not free to pick and choose their clients. They are thought to have no formal contractual relationship with their clients, and they are incapable of suing their clients for a fee. It is therefore noteworthy that English barristers enjoyed in the 19th century, as they still do today, a broad immunity from liability for negligent misconduct.

467 U.S. at 921, 104 S.Ct. at 2825 (internal citations omitted).

---

**3.** It is noteworthy that our Supreme Court's opinion after transfer decided the case solely on the basis that Costa's petition did not state a claim upon which relief could be granted in that it asserted "no claim for breach of fiduciary duty, constructive fraud, or otherwise." *Costa v. Allen,* 274 S.W.3d 461, 463 (Mo. banc

2008). Indeed, the Court expressly stated that it was unnecessary to "decide if Allen effectively raised official immunity" because Costa denied his action invoked "tort principles measured by a standard of care." *Id.* at 463 n. 4.

While immunity has not been specifically granted to public defenders, Missouri recognizes two different forms of immunity for public employees in general. "[T]he public duty doctrine along with the official immunity doctrine are two distinct yet related common law doctrines, firmly entrenched in Missouri law, which impose obstacles to civil recovery against public officials." *Green v. Missouri Dep't of Transp.*, 151 S.W.3d 877, 881 (Mo.App. S.D.2004) (internal quotation omitted).

"The public duty doctrine shields public officers, and the governmental bodies that employ them, from liability for injuries or damages resulting from the officers' breach of a duty owed to the general public and does not shield public officials from liability resulting from the breach of a duty owed to particular individuals." *Id.* "'By the public duty doctrine, a public employee is not civilly liable—even for breach of a ministerial duty—if that duty is owed to the general public rather than to a particular individual.'" *Id.* at 882 (quoting *Jungerman v. City of Raytown*, 925 S.W.2d 202, 205 (Mo. banc 1996)). Because all of the allegations contained in Kuehne's petition related only to duties owed to him personally and not to the public in general, the public duty doctrine provides no protection in this case and would ordinarily be inapplicable to any malpractice claim.

Hogan relies instead on the defense of official immunity.[4] "The judicially-created doctrine of official immunity 'protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts.'" [5] *Boever v. Special*

*Sch. Dist. of St. Louis County*, 296 S.W.3d 487, 491 (Mo.App. E.D.2009) (quoting *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. banc 2008)). Thus, it does not matter whether the duty relates to the public in general or to an individual member of the public so long as the acts involved are discretionary in nature.

"Whether an act can be characterized as discretionary depends on the degree of reason and judgment required." *Southers*, 263 S.W.3d at 610. "A discretionary act requires the exercise of reason in the adaptation of means to an end and discretion in determining how or whether an act should be done or course pursued." *Id.* "Official immunity is intended to provide protection for individual government actors who, despite limited resources and imperfect information, must exercise judgment in the performance of their duties." *Id.* at 611.

On the other hand, "[a] ministerial function is one 'of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed.'" *Boever*, 296 S.W.3d at 492 (quoting *Southers*, 263 S.W.3d at 610). "In addition, in order to prescribe a ministerial duty, the statute or regulation must be mandatory and not merely directory." *Id.* "Absent allegations averring the existence of a statutory or departmentally-mandated duty and a breach of that duty, a petition fails 'to state a claim that is not barred by the doctrine of official immunity as a matter of

4. Official immunity was first recognized in 1854 and has been accepted policy in this State ever since. *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. banc 2008) (citing *Reed v. Conway*, 20 Mo. 22 (1854)). The public duty doctrine, on the other hand, was not adopted until 1970. *Id.* at 611.

5. Official immunity is restricted to claims of negligence and does "not apply to conduct that is willfully wrong or done with malice or corruption." *Southers*, 263 S.W.3d at 612.

law.'" *Id.* (quoting *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 446 (Mo. banc 1986)).

Kuehne contends that, beyond the discretionary/ministerial distinction, official immunity, like the public duty doctrine and sovereign immunity, requires that the actions of the state employee be "of the essence of governing." An almost identical argument was recently addressed and rejected in *Richardson v. City of St. Louis*, 293 S.W.3d 133, 140 (Mo.App. E.D. 2009):

> [T]o the extent [Appellant] argues that official immunity applies only to discretionary actions that are purely governmental in nature, this is not the law in Missouri. Missouri courts have routinely extended official immunity to discretionary acts even when the public official's actions were not governmental in nature. *See, e.g. State ex rel. St. Louis State Hosp. v. Dowd*, 908 S.W.2d 738, 741 (Mo.App. E.D.1995) (supervisor at public hospital's decision to turn on paper shredder was discretionary), abrogated on other grounds by *Cain v. Mo. Highways and Transp. Comm'n*, 239 S.W.3d 590 (Mo. banc 2007); *Warren v. State*, 939 S.W.2d 950, 954 (Mo.App. W.D.1997) (prison officials' decision regarding the absence of a safety guard on a table saw was discretionary). Recently, our Supreme Court thoroughly discussed the scope of official immunity and did not restrict immunity only to those actions which "go to the essence of governing," *See Southers*, 263 S.W.3d at 610–11. Moreover, in looking closely at the source of the "essence of governing" language quoted in *Eli Lilly*,[6] we find that the phrase was originally used by the Supreme Court in its *Jones* decision when discussing the contours of sover-

eign immunity rather than official immunity and therefore is of limited utility as we consider the reach of official immunity under the circumstances presented here.

In light of *Richardson*, any argument that public defenders should not benefit from official immunity based on analogy to state employed physicians being subject to medical malpractice claims in reliance on *State ex rel. Eli Lilly & Co. v. Gaertner*, 619 S.W.2d 761 (Mo.App. E.D.1981), is misplaced.

Public defender Hogan raised official immunity as an affirmative defense to Kuehne's claims. Accordingly, the question is whether Hogan was entitled to official immunity from the claims asserted in Kuehne's petition. In order for this to be established and dismissal to be appropriate, Hogan's entitlement to immunity must be apparent when the allegations in the petition are viewed in the light most favorable to Kuehne. *Reynolds v. Diamond Foods & Poultry, Inc.*, 79 S.W.3d 907, 909 (Mo. banc 2002). So viewed, it must be clear that Hogan is a state employee and that the allegedly negligent actions were discretionary in nature.

Kuehne acknowledges in his petition that Hogan, who was appointed to represent him, was employed by the Missouri Public Defender System. Public defenders in the Missouri Public Defender System are undeniably "public employees." The Office of the State Public Defender is a department within Missouri's judicial branch. § 600.019.1.[7] A director, deputy directors, and public defenders are selected by the Public Defender Commission created by the legislature and comprised of individuals appointed by the Governor on advice and consent of the senate.

**6.** Referring to *State ex rel. Eli Lilly & Co. v. Gaertner*, 619 S.W.2d 761 (Mo.App. E.D. 1981).

**7.** All statutory references are to RSMo 2000 unless otherwise noted.

*§ 600.015.* Each public defender so appointed has the authority to then employ assistant public defenders, deputy public defenders, and other support personnel. *§ 600.021.1.* "A complete budget for the state public defender system [is] provided through an annual appropriation subject to approval by the governor and the general assembly." *§ 600.040.2.* Furthermore, all public defenders and those employed by public defenders are entitled to all benefits provided for in the Missouri state employees' retirement system. *§ 600.040.3.*

Accordingly, we must next consider whether Hogan's allegedly negligent acts were discretionary or ministerial in nature. In his petition, Kuehne claimed that Hogan was negligent in failing to secure the attendance of witnesses necessary to support his claim for post-conviction relief despite Kuehne's express instructions to do so.

"Whether an act can be characterized as discretionary depends on the degree of reason and judgment required." *Southers,* 263 S.W.3d at 610. "A discretionary act requires the exercise of reason in the adaptation of means to an end and discretion in determining how or whether an act should be done or course pursued." *Id.* Hogan's decisions regarding which witnesses to call to testify at the post-conviction hearing clearly involve the exercise of professional judgment in light of the facts and posture of the case and are, therefore, discretionary in nature.[8] No statute or regulation dictated that those witnesses must be called.

Thus, the only potential issue remaining is whether some compelling policy reason mandates that an exception be carved out of official immunity to render it inapplicable to public defenders. Having reviewed extensive case law on the subject and con-sidered the policy concerns related to allowing public defenders to retain official immunity, I can only conclude that the reasons in favor of allowing public defenders to avail themselves of such immunity are far more compelling than those policy concerns that would favor excepting them from such immunity.

In *Dziubak v. Mott,* 503 N.W.2d 771, 777–78 (Minn.1993), the Minnesota Supreme Court convincingly summed up its policy reasons for stretching the common law doctrine of judicial immunity to cover public defenders, stating:

> Immunity from suit for public defenders best serves the indigent population in preserving the resources of the defender's office for the defense of the criminally accused. Immunity also aids in the recruitment of qualified attorneys to represent indigent clients in criminal proceedings. Immunity preserves the criminal justice system which relies upon the judge, prosecutor and public defender as essential participants. This serves the best interests of indigent defendants and of society as a whole.... Since justice demands that a defense be provided to criminal defendants who are not able to afford privately retained counsel, it is essential that a sufficient number of qualified attorneys be willing and able to provide this defense. Immunity will aid in the continued recruitment of attorneys to perform this service in our criminal justice system; such service is eagerly sought by most attorneys. The accused defendant is not the sole beneficiary. Society as a whole depends on the role of defense counsel to secure an ordered system of liberty and justice, as ordained by our Constitution. The extension of immunity to public defenders will ensure that the resources

---

8. As a practical matter, virtually any decision or action taken by an attorney during trial involves the exercise of professional judgment and is clearly discretionary in nature.

available to the public defender will be used for the defense of the accused, rather than diminished through the defense of public defenders against civil suits for malpractice. Immunity will conserve these resources to provide an effective defense to the greatest number of indigent defendants.

While obviously addressing judicial immunity, rather than official immunity, and whether to extend that doctrine, these policy reasons are equally applicable to deciding whether to except public defenders from our established official immunity doctrine. This opinion was shared by the Supreme Court of Vermont which found the policy arguments set forth in *Dziubak* persuasive in its holding that public defenders were state employees entitled to statutory immunity for negligence while acting in within the scope of their employment just like any other state employee. *Bradshaw v. Joseph,* 164 Vt. 154, 666 A.2d 1175, 1178 (1995). The Vermont Supreme Court further noted:

> The apparent paradox of having the government support and pay for a constitutionally adequate system of legal representation for those charged by the government with criminal offenses was inherent in the public defender system from the outset. It is a variant of numerous interbranch conflicts that inhere in our system of separation of powers, including the clear paradox of having the judicial branch decide constitutional challenges to legislative enactments whereas the Legislature appropriates the funds that sustain the judicial branch. The Legislature acknowledged the potential problem by providing in 13 V.S.A. § 5253(a) that "no other official or agency of the state may supervise the defender general or assign [the defender general] duties in addition to those prescribed by this chapter."
> Categorizing public defenders as state employees for the purposes of § 5602 is

not likely to exacerbate potential conflicts, and given the generally scarce resources with which defenders' offices operate, may actually promote a vigorous and independent defense. As one court stated, quoting the public defender's brief in that case:

> The most probable result of ... a decision [not to grant immunity] would be the exact opposite of what the courts want. Both the Court and the Public Defender's Office [seek] adequate representation of defendants in criminal proceedings .... however, if a civil rights suit from unsatisfied clients is a constant threat to the Attorney involved, then there would be a chilling effect upon Defense Counsel's tactics. Defense Counsel would be caught in an intrinsic conflict of protecting himself and representing his client.

*Brown v. Joseph,* 463 F.2d 1046, 1049 (3d Cir.1972) cert. denied, 412 U.S. 950, 93 S.Ct. 3015, 37 L.Ed.2d 1003 (1973). As the *Dziubak* court pointed out in a related context, "Immunity also aids in the recruitment of qualified attorneys to represent indigent clients in criminal proceedings. Immunity preserves the criminal justice system which relies upon the judge, prosecutor and public defender as essential participants. This serves the best interests of indigent defendants and of society as a whole." 503 N.W.2d at 777.

*Id.* (internal quotation omitted).

I find the rationale of the *Dziubak* and *Bradshaw* courts compelling. In addition, the majority of jurisdictions addressing the issue, either judicially or legislatively, have extended immunity of some type to public defenders. *See Bradshaw,* 666 A.2d at 1178; *Dziubak,* 503 N.W.2d at 777; *Dontigney v. Connecticut Chief Pub. Defender's Office,* No. CV0840172465, 2009 WL

1706905, at *5–6, 2009 Conn.Super. LEXIS 1426 at *17 (Conn.Super.Ct. May 29, 2009) (noting that Connecticut has extended its sovereign immunity statute to provide immunity for public defenders); *Browne v. Robb,* 583 A.2d 949, 951 (Del.1990) (stating that Delaware has "recognized that a public defender is protected by qualified immunity under the State Tort Claims Act," holding that public defenders were state employees and "approvingly cited a decision of the United States Supreme Court which presented arguments in favor of granting immunity to public defenders based upon the traditions of the common law"); *Johnson v. Halloran,* 194 Ill.2d 493, 252 Ill.Dec. 203, 742 N.E.2d 741, 744 (2000) ("The Public and Appellate Defender Immunity Act provides that public defenders and their assistants and the persons or entities employing them are not liable 'for any damages in tort, contract, or otherwise, in which the plaintiff seeks damages by reason of legal or professional malpractice, except for willful and wanton misconduct.'"); *Morgano v. Smith,* 110 Nev. 1025, 879 P.2d 735, 736–37 (1994) (quoting NRS 41.032(2)) (holding Nevada provides official immunity to public defenders and their deputies or assistants for malpractice arising out of discretionary decisions made pursuant to his or her duties as a public defender because, by statute, no action may be brought against an officer of the state which is "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the state or any of its agencies or political subdivisions or of any officer, employee or immune contractor of any of these, whether or not the discretion involved is abused"); *Collins v. Tabet,* 111 N.M. 391, 806 P.2d 40, 51 (1991) ("[I]n New Mexico the legislature has decided that a public defender shall not be liable for the performance or nonperformance of his or her services."); *Thorp v. Strigari,* 155 Ohio App.3d 245, 800 N.E.2d 392, 401 (2003) (noting that Ohio has held that public defenders, as employees of a political subdivision, are immune from claims of negligence under its Political Subdivision Tort Liability Act, which provides that a public employee is "immune from liability in performing his job unless (1) his acts or omissions are manifestly outside the scope of his employment; (2) his acts or omissions are malicious, in bad faith, or wanton or reckless; or (3) liability is expressly imposed upon the employee by another statute."); *Mooney v. Frazier,* 693 S.E.2d 333, 338 (W.Va.2010) (noting that West Virginia's Public Defender Services Act of 1989 provides immunity for public defenders "from liability arising from that representation in the same manner and to the same extent that prosecuting attorneys are immune from liability"); Tennessee Code Annotated *§ 8–14–209* (affording immunity to public defenders and their employees acting in their official capacity) & Tennessee Code Annotated *§ 9–8–307(h)* & *§ 8–14–208* (providing immunity for personnel of the public defender system under the general statute providing immunity to state employees for acts or omissions within the scope of their employment except for willful, malicious, or criminal acts).

The few cases I have found from other jurisdictions denying immunity to public defenders address the application of judicial immunity or a form of common law immunity that was specifically limited to governmental policy-making officials. Florida, for example, has refused to extend its *judicial immunity* doctrine to public defenders because:

> *Considerations which require that a judge and prosecutor be immune* from liability for the exercise of duties essential to the administration of justice, do not require that the same immunity be extended to the public defender. While the prosecutor is an officer of the state whose duty it is to see that impartial

justice is done, the public defender is an advocate, who once appointed owes a duty only to his client, the indigent defendant. His role does not differ from that of privately retained counsel.

*Schreiber v. Rowe,* 814 So.2d 396, 398 (Fla. 2002) (internal quotation omitted). The court further noted Florida has, by statute, "extended the waiver of sovereign immunity to public defenders, thereby exempting public defenders and their employees from personal liability." *Id.* at 399.

New Jersey has also determined that *absolute judicial immunity* should not be extended to public defenders because, unlike judges and prosecutors, public defenders were not serving the interests of society as a whole and that public defenders are, therefore, subject to liability for malpractice. *P.T. v. Richard Hall Cmty. Mental Health Care Ctr.,* 364 N.J.Super. 546, 837 A.2d 427, 432–33 (N.J.Super. Ct. Law Div.2000). Moreover, the New Jersey Tort Claims Act does not shield public defenders because it only protects public employees "for legislative or judicial action or inaction, or administrative action or inaction of a legislative or judicial nature." *Delbridge v. Office of the Pub. Defender,* 238 N.J.Super. 288, 569 A.2d 854, 861 (N.J.Super. Ct. Law Div.1989). Thus, the nature of the immunities created by New Jersey statutory and common law are significantly different from those existing in this State.

I have previously noted that Pennsylvania has denied immunity to public defenders because that state's official immunity doctrine established by common law *only applies to policy-making officials* and does not extend to "mere public employees." *Reese v. Danforth,* 486 Pa. 479, 406 A.2d 735, 737 (1979). Virginia, on the other hand, denied governmental immunity to public defenders because that common law doctrine only applied to employees over whom the state exerted a high level of control and the State had almost no control over the pleadings or defense tactics of a public defender. *Adkins v. Dixon,* 253 Va. 275, 482 S.E.2d 797, 800–01 (1997).

None of these cases are relevant to Missouri's common law doctrine of official immunity and offer no compelling policy reason for exempting public defenders from official immunity as it exists in this State.

For the foregoing reason, it is my view that public defenders are clearly immune from malpractice claims under the official immunity doctrine in that they are state employees utilizing discretion in the course of their employment. Since Hogan is a public defender employed by the Missouri Public Defender System and the errors and omissions about which Kuehne complains in his petition were discretionary in nature, I would affirm the dismissal of Kuehne's petition on the basis of official immunity. Accordingly, I concur in the result reached by the majority but do not join in the majority's rationale for that result.